IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

ROBERT STINSON, JR.
LIFE'S GOOD, INC.
LIFE'S GOOD STABL MORTGAGE FUND, LLC
LIFE'S GOOD HIGH YIELD MORTGAGE
    FUND, LLC
LIFE'S GOOD CAPITAL GROWTH FUND, LLC
IA CAPITAL FUND, LLC
KEYSTONE STATE CAPITAL CORPORATION

Defendants, and

FIRST COMMONWEALTH SERVICE
    COMPANY
SUSAN L. STINSON
CHRISTINE A. STINSON
MICHAEL G. STINSON
LAURA MARABLE

Relief Defendants.

CIVIL ACTION NO.
10-CV-03130 (BMS)

HON. BERLE M. SCHILLER

INITIAL REPORT OF KAMIAN SCHWARTZMAN,
**COURT APPOINTED RECEIVER**

Gaetan J. Alfano
J. Peter Shindel, Jr.
Pietragallo Gordon Alfano
Bosick & Raspatni, LLP
1818 Market Street, Suite 3402
Philadelphia, PA 19103
Telephone: (215) 320-6200
Facsimile: (215) 981-0082

## **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................1

II.    OVERVIEW OF THE RECEIVER'S ACTIVITIES .............................................3

    A.    ADMINISTRATIVE TASKS AND MISC. LEGAL TASKS......................3

        1.    Section 754 Notices ........................................................3

        2.    Website ........................................................................4

        3.    Tax Treatment...............................................................4

        4.    Mail ...........................................................................4

        5.    Correspondence to Business Creditors and Collections Agencies......................................................................5

        6.    Meetings and Interviews with Source Entities and Interested Parties.....................................................5

        7.    Retention of Slosberg Auctioneers & Appraisers...................6

        8.    Miscellaneous Court Filings ...........................................6

        9.    Notice of Receivership Order ..........................................7

        10.    Forensic Accounting ....................................................7

    B.    ASSET RECOVERY – ASSETS IN THE POSSESSION, CUSTODY AND CONTROL OF THE RECEIVERSHIP ESTATE ............7

        1.    Liquid Assets ...............................................................7

        2.    Illiquid Assets .............................................................8

            a.    Real Property.........................................................8

            b.    Vehicles...............................................................9

            c.    Personal Property ...................................................11

          d.    Other Property ................................................................13

      3.   Assets Abandoned ................................................................13

   C.    ASSET RECOVERY – ANTICIPATED ASSETS NOT YET IN
        IN THE POSSESSION OF THE RECEIVERSHIP ESTATE ...................13

    1.   Real Property ................................................................13

    2.   Security Deposits ................................................................14

    3.   Retirement Annuity Contract ................................................14

    4.   Surety Bonds ................................................................14

III.     RECEIVER'S POTENTIAL LITIGATION MATTERS ......................................15

IV.     INVESTOR INFORMATION ................................................................16

V.      RECEIVER'S PLAN ................................................................17

Kamian Schwartzman (the "Receiver"), the Court appointed Receiver with control over the assets and records of Robert Stinson, Jr., Life's Good, Inc., Life's Good STABL Mortgage Fund, LLC, Life's Good High Yield Mortgage Fund, LLC, Life's Good Capital Growth Fund, LLC, IA Capital Fund, LLC, Keystone State Capital Corporation, First Commonwealth Service Company, Susan L. Stinson, Christine A. Stinson, Michael G. Stinson, and Laura Marable (the "Source Entities") files his Initial Report, in accordance with the Court's Order Establishing Receivership Estate of September 13, 2010, and reports to the Court as follows:

## I.    INTRODUCTION

On June 29, 2010, the Securities and Exchange Commission ("SEC") filed a complaint against Defendants, Robert Stinson, Jr., Life's Good, Inc., Life's Good STABL Mortgage Fund, LLC, Life's Good High Yield Mortgage Fund, LLC, Life's Good Capital Growth Fund, LLC, IA Capital Fund, LLC, and Keystone State Capital Corporation, alleging that Stinson, through his various entities, engaged in securities fraud and conducted a Ponzi scheme.  Particularly, the complaint alleges that since 2006 Stinson raised approximately $16 million from investors by falsely representing that his entities were successfully investing in various real estate ventures. Instead of investing in real estate, Stinson was allegedly using the investor funds for personal use and was transferring the funds to family members and others.  To this end, the SEC complaint also names First Commonwealth Service Company, Susan L. Stinson, Christine A. Stinson, Michael G. Stinson, and Laura Marable as Relief Defendants, and alleges that the Relief Defendants were unjustly enriched by receiving investor funds.

Also on June 29, 2010, the Court granted the SEC's *ex parte* Motion for a Temporary Restraining Order, freezing the assets of the Defendants and Relief Defendants.  On July 12 and

13, 2010, the Court entered, by consent, an Order of Preliminary Injunction freezing the assets, inter alia, of the Source Entities,[1] pending final determination of the action.

On September 13, 2010, upon motion by the SEC, the Court entered Orders Establishing Receivership Estate (Docket No. 29) and appointing Kamian Schwartzman as Receiver (Docket No. 30) (collectively, the "Receivership Orders").   Pursuant to the Order Establishing Receivership Estate, the Court took jurisdiction and possession over all Receivership Property, which is defined as "the assets, including without limitation monies, securities, choses in action, and properties, both real and personal, tangible and intangible, of whatever kind and wherever situated, of the Defendants and Relief Defendants . . . and/or any entities that the Source Entities own or control, or in which any of them have an interest, as well as any other assets that may be collected in the captioned matter."   Additionally, the court took jurisdiction and possession over any records, computers and documents relating to Receivership Property, as Receivership Records.   The Order Establishing Receivership Estate further provides that the Receiver is charged with using reasonable efforts to determine the location, nature and value of all Receivership Property and that the Receiver is required to take custody, control and possession of such property.

Pursuant to this Order, the Receiver shall file an Initial Report, within ninety (90) days of appointment, which contains a summary of the Receiver's operations and details the property and expenditures of the Receivership Estate.   The Initial Report shall also assess the future prospects of the Receivership and make a recommendation to the Court as to future action.

---

[1] A  Preliminary Injunction was entered, by consent, as to Relief Defendant Laura Marable on July 23, 2010.

2

On December 9, 2010, the Receiver filed a Petition for an extension of the December 13, 2010 deadline for filing an Initial Report.  The Court granted the Receiver's Petition, extending the deadline for the Receiver's Initial Report until January 14, 2010.

Pursuant to Paragraph 10 of the Order, the SEC, and any other interested party, may file a response to the Initial Report within ten (10) business days of its filing.  The Receiver has first presented this Report to the SEC, and the SEC does not oppose the entry of the Order recommended herein and does not intend to file any objection or response.

## II.    OVERVIEW OF THE RECEIVER'S ACTIVITIES

Since his appointment, the Receiver has completed various administrative tasks required by law and necessary for the marshaling of Receivership Property.  The Receiver has also begun locating and seizing Receivership Property, pursuant to the Order Establishing Receivership Estate.  Finally, the Receiver has initiated a review of potential third-party actions.

### A.    ADMINISTRATIVE TASKS AND MISCELLANEOUS LEGAL TASKS

#### 1.    Section 754 Notices

Upon his appointment, the Receiver provided notice of the Receivership, pursuant to 28 U.S.C. § 754.  This section states that the "receiver shall, within 10 days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located."  To this end, the Receiver filed § 754 Notices in a total of ninety-four (94) district courts on or about September 20, 2010, in order to preserve any claims on behalf of the Estate that the Receiver may currently have or may discover in the future.

### 2.   Website

On October 11, 2010, in compliance with the Receivership Orders, the Receiver published a website (http://www.lifesgoodfundsreceivership.com), in order to inform investors, and the general public, of the status of the Receivership Estate.  The website makes available each docket entry in the case and provides news items related to the case.  Lastly, the website allows investors to contact the Receiver directly with any inquiries regarding the Receivership Estate.

### 3.   Tax Treatment

The Receiver has additionally complied with Paragraph 32 of the Order Establishing Receivership Estate, concerning the Tax Treatment of the Receivership Estate.  Particularly, the Receiver has obtained a tax identification number for the Receivership Estate, as the Receivership Estate is considered a taxable entity.  The Receiver is further aware of his obligations to timely file all applicable federal, state and local tax returns and to satisfy any applicable withholding or reporting requirements, and the Receiver intends to fully comply.

### 4.   Mail

Pursuant to Paragraph 25 of the Order Establishing Receivership Estate, the Receiver has redirected any mail addressed to the Source Entities to the Receiver.  The Receiver has then opened and inspected all such mail, in an effort to determine the location of any Receivership Property and Receivership Records and gather other pertinent information.  Any correspondence that does not concern Receivership Property or Receivership Records has been forwarded to the Source Entities.

### 5.      Correspondence to Business Creditors and Collections Agencies

Since having the mail forwarded, the Receiver has received correspondence from creditors of the Source Entities and agencies seeking to collect debts from the Source Entities. The Receiver has responded to any such inquiries by informing creditors and debt collectors of the Order Establishing Receivership Estate.  The Receiver is in the process of compiling a list of all known creditors and the amounts of their claims, and is not currently in a position to provide an exhaustive list.  The Receiver will provide such a list, along with a preliminary report on the status of Creditor Claims Proceedings, in the next Quarterly Report, should the Court allow the Receivership to continue.  The Receiver anticipates that, should this Receivership continue, he will seek from the Court an order setting a claims process and a date by which, after public notice, claims against the Estate about which the Receiver has not been notified will be barred.

### 6.      Meetings and Interviews with Source Entities and Interested Parties

In an effort to locate Receivership Property and Records and to further his investigation, the Receiver has conducted a number of interviews, meetings and depositions with the Source Entities and other interested parties.  Specifically, the Receiver interviewed Defendant Robert Stinson, Jr., on October 15, 2010, Relief Defendant Michael Stinson on November 2, 2010, and Relief Defendant Christine Stinson on November 12, 2010.   The Receiver additionally interviewed Matthew Razzano on November 4, 2010.[2]

The  Receiver  further  conducted  depositions  of  Relief  Defendant  Susan  Stinson,  on December 3 and 6, 2010, pursuant to the Receiver's powers and duties provided in Paragraph 20 of the Order Establishing Receivership Estate.  Third-parties Sharon Esterly and Philip Weber

---

[2] Mr. Razzano and his wife hold title to real property in Doylestown, Pennsylvania, which is subject to a purported mortgage held by Life's Good STABL Mortgage Fund in the amount of $350,000.

were also deposed regarding the security deposits and pre-paid rent transferred to them by Susan Stinson since June 2010.

Additionally, the Receiver has interviewed telephonically the tenants of a North Carolina farm, in which Relief Defendant Susan Stinson holds an interest, and Steven Ratliff, a former representative of Defendant Keystone State Capital Corporation, in California.

### 7.   Retention of Slosberg Auctioneers & Appraisers

On November 8, 2010, the Receiver filed a Motion with the Court seeking permission to retain Slosberg Auctioneers & Appraisers.  The Receiver requested the initial help of Slosberg Auctioneers for the removal, hauling and storage of Receivership Property.  The Court granted the Receiver's Motion on November 9, 2010, and Slosberg Auctioneers is currently storing the majority of the personal property in the custody of the Receivership.

On January 12, 2011, the Receiver filed a Motion to approve the sale of personal property seized from the Source Entities.  Should the Court grant the Motion, Slosberg Auctioneers will be utilized for a public auction of this property, as deemed to be in the best interests of the Receivership Estate.

### 8.   Miscellaneous Court Filings

On November 12, 2010, the Receiver filed a Motion to Hold Susan Stinson in Contempt. Generally, the Motion alleges that Mrs. Stinson opened a bank account and expended funds without prior Court approval in violation of the Court ordered freeze and Order Establishing Receivership Estate.  The Court ordered Susan Stinson to respond within seven (7) days, which she did.  The Receiver anticipates prosecuting this Motion before the Court, if the Receivership Estate continues.

### 9.   Notice of Receivership Order

The Receiver has also filed Notice of the Receivership Orders in certain county Recorder of Deeds offices, where the Source Entities are known to have some interest in real property.  To date, Notice has been filed in Chester County, Pennsylvania, and Bucks County, Pennsylvania.

### 10.   Forensic Accounting

The Receiver has identified a forensic accounting and business valuation firm in order to assist the Receiver in carrying out his duties under the Receivership Orders.  The Receiver has negotiated discounted rates with this forensic accounting firm and intends to request permission to engage the firm, if the Receivership Estate continues.

### B.   ASSET RECOVERY – ASSETS IN THE POSSESSION, CUSTODY AND CONTROL OF THE RECEIVERSHIP ESTATE

### 1.   Liquid Assets

The Receivership currently has liquid assets in the amount of $172,433.20.[3]  As set forth in Exhibit A, attached, these assets are comprised primarily of transfers from financial institutions in which the Source Entities maintained accounts.  Specifically, the Receivership account includes:

- $36.50 received from Penn Liberty Bank on October 12, 2010;

- $104,676.49 received from Bank of America on October 13, 2010;

- $18,690.79 received from Bank of Hawaii on October 19, 2010;

- $2,155.85 received from Wachovia on October 19, 2010;

- $5,337.76 received from Republic Bank on October 22, 2010;

- $1,453.99 received from Citibank on October 26, 2010;

---

[3] $5,000 of the funds are held in a PNC Business Checking Account, and the remaining balance is kept in a PNC Money Market Account.

- $58,121.07 received from TD Bank on November 8, 2010;

- $24.43 received from PNC Bank on December 8, 2010; and

- $485.00 received from Susquehanna Bank on December 8, 2010;

The Receiver has located these funds with the help of the SEC and through inquiries sent directly to financial institutions potentially holding Receivership Property.  The Receiver sent thirty-five (35) such inquiries to national and regional banks.  Through this correspondence, the Receiver informed the institution of the pending SEC action and provided them notice of the Orders Establishing Receivership Estate and Appointing Receiver.  The correspondence additionally requested the banks to identify any accounts or safety deposit boxes held in the name of any of the Source Entities.  The Receiver sent twenty-five (25) similar inquiries to regional credit unions.  Such communication will continue if and when additional institutions are identified.

In addition to the transfers from financial institutions listed above, the Receivership Estate contains an additional $11,273.22 in "payments on account" received by Matthew Razzano with respect to the Doylestown property.[4]

### 2.    Illiquid Assets

#### a.    Real Property

The Receivership Estate currently holds an ownership interest in at least five (5) real properties.  These properties include:

- Chesterbrook, Pennsylvania property: Robert Stinson and Susan Stinson currently reside in a single family townhouse in Chesterbrook, Pennsylvania. This property is currently subject to a mortgage foreclosure action for a mortgage originally in

---

[4] The amount of liquid assets in the Receivership Estate is net of fees and costs for the Receiver and Staff, as well as other costs expenses accrued in the Receiver's investigation and recovery of assets.  See Exhibit A.

the amount of $276,000.   Given the pending foreclosure, the Receiver's investigation as to this property's value is ongoing.[5]

- Reading, Pennsylvania property: This single family townhouse in Reading, Pennsylvania, was purchased by Defendant Life's Good STABL Mortgage Fund in 2008 for $125,000.  The Receiver is currently investigating the actual value of this asset and whether it is encumbered.

- Philadelphia, Pennsylvania property: This single family townhouse in Philadelphia, Pennsylvania, was obtained by Life's Good STABL Mortgage Fund in 2007.  The market value of this property was assessed by the Philadelphia Office of Property Assessment as $24,300, however the property is encumbered with judgment liens in excess of $9,000.  The Receiver is currently investigating the value of this property in order to determine its most efficient disposition.

- Philadelphia, Pennsylvania property: This single family townhouse in Philadelphia, Pennsylvania, was obtained by Life's Good STABL Mortgage Fund in 2007.  The market value of this property was assessed by the Philadelphia Office of Property Assessment as $17,500.   The Receiver is currently investigating the actual value of this asset and whether it is encumbered.

- Hyde County, North Carolina property:  Susan Stinson was deeded in 1978 a one-third (1/3) interest in a fifty-seven (57) acre farm in Hyde County, North Carolina.  Mrs. Stinson receives annual rental income from the farm tenants, pursuant to a Rent Agreement.   The farm tenants have been provided copies of the Orders Establishing Receivership Estate and Appointing Receiver and have been directed to forward any future rental payments to the Receiver.   The rental payment to Mrs. Stinson for 2009 was $2,487.83, and the payment for 2010 was $2,823.59.  In response to a subpoena, John Howard, Mrs. Stinson's brother, has provided the Receiver with documents related to this property.

### b.    Vehicles

The Receivership Estate has custody and possession of ten (10) automobiles that are titled to the Source Entities.[6]  These vehicles include a 2002 Chevrolet Venture, 2005 GMC Savannah, 1999 Dodge Caravan, 2000 Ford Excursion, 2000 Lincoln Town Car, 2007 Mercedes,

---

[5] Defendant Robert Stinson and Relief Defendants Susan Stinson and Christine Stinson previously resided in a rental property in Berwyn, Pennsylvania (hereinafter referred to as the "Stinson Berwyn residence").

[6] The Receiver additionally notes that two vehicles, a 2010 Mercedes and 2007 Mercedes, were seized and are in the custody of the United States Attorney's Office.  The Receiver is currently working with the U.S. Attorney's Office on taking possession of these two vehicles.

2001 Mercedes, 2004 Chrysler Sebring, 2005 Chrysler Town and Country, and a 2006 Nissan Altima. These vehicles were taken into custody as follows:

On November 10, 2010, the Receiver filed a Motion to accept surrender of two Mercedes-Benz automobiles. At the time, these vehicles were in the possession of Relief Defendant Michael Stinson, and they had been purchased by Michael Stinson and his wife with funds received from Life's Good, Inc. The Court granted the Receiver's Motion on November 10, 2010, and the automobiles were transported to Slosberg Auctioneers at the Receiver's direction.

On November 12, 2010, the Receiver filed a separate Motion to accept surrender of five additional vehicles, GMC Savannah, Chevrolet Venture, Lincoln Continental, Ford Excursion and Dodge Caravan. These vehicles were titled in the names of Defendants Robert Stinson and Life's Good, Inc. The Court granted the Receiver's Motion on November 15, 2010, and four of the vehicles: the GMC, Chevrolet, Ford and Dodge, were surrendered to Slosberg Auctioneers.

Because the Lincoln Continental had not been surrendered in accordance with the November 15, 2010 Court Order, the Receiver filed a subsequent Motion seeking the Court to compel surrender of that Lincoln automobile. The Motion argued that Defendant Robert Stinson or his agents exercised control over the Lincoln vehicle, and thus that the Order Establishing Receivership compelled its surrender. The Court granted the Motion on November 22, 2010, and the vehicle was subsequently surrendered to Slosberg Auctioneers.

The Chrysler Town and Country, owned by Defendant Life's Good, Inc., was seized on November 8, 2010, when the Receiver seized personal property from the Stinson Berwyn residence. The Chrysler Sebring, owned by Relief Defendant Susan Stinson, was surrendered to

10

the Receiver by agreement on November 12, 2010.  Lastly, the Nissan Altima, which was identified through the review of seized insurance documents and is owned in part by Susan Stinson, was seized on December 2, 2010, when the Receiver revisited the Stinson Berwyn residence to seize additional personal property.

All of the above-mentioned vehicles are currently housed at Slosberg Auctioneers.  The Receiver has requested replacement titles for these vehicles from the Pennsylvania Department of Transportation; however, the replacement titles have not yet been received.  Once the Receiver obtains titles, the Receiver will file a Motion to approve the sale of the vehicles by public auction.  The Receiver additionally notes that two vehicles, a 2010 Mercedes and 2007 Mercedes, were seized by the Federal Bureau of Investigation and are in the custody of the United States Attorney's Office.  The Receiver is currently working with the U.S. Attorney's Office for the recovery of these two vehicles and anticipates taking possession of the vehicles on behalf of the Receivership.

   c.      **Personal Property**

To date, the Receiver, with the help of the United States Marshals, has seized substantial personal property from the Source Entities.  On October 27, 2010, the Receiver initially conducted an inventory of the Chesterbrook, Pennsylvania property and the Stinson Berwyn residence.  At that time, the Receiver seized some small items of personal property, of perceived value and which the Receiver believed could be easily disposed or hidden.  Subsequently, on November 8, 2010, the Receiver returned to the Stinson Berwyn residence and seized any and all personal property that was deemed to have value by the Receiver, employing the expertise of Slosberg Auctioneers.  On November 10, 2010, the Receiver also inspected and seized items from two storage units located in Frazer, Pennsylvania, of which the Receiver became aware

through the review of seized documents and which were rented by Susan Stinson.  Then on November 22, 2010, the Receiver seized personal property from a Philadelphia apartment rented by Susan Stinson.  Believing that property of value had been moved from the Philadelphia apartment to the Stinson Berwyn residence after the November 8 seizure, the Receiver returned to the Stinson Berwyn residence on December 2, 2010, and seized additional items that were not present at the November 8 visit.

In all, the Receiver has seized approximately three (3) storage trailers of personal household property, including electronics, jewelry, household furniture, musical instruments, exercise equipment, appliances, numerous boxes of merchandise from QVC and the Home Shopping Network, many of which were unopened, clothing, and other miscellaneous personal property.  On January 11, 2011, the Receiver filed a Motion for Approval of the Sale of Personal Property, which seeks Court approval to sell at a public auction the personal property seized from the Source Entities.  The Motion is currently pending before the Court.

As stated above, the personal property seized by the Receiver includes numerous unopened boxes of QVC merchandise.  QVC has been contacted about the potential return of any unopened boxes, and the Receiver is currently considering any such possible transaction.

The Receivership also owns a Bosendorfer piano that had been purchased by Defendant Robert Stinson but was never delivered to him.  The Receiver has preliminarily determined that the most efficient disposition of this asset is through a private sale, which is currently being negotiated.  The Receiver will petition the Court for prior approval of any such sale, barring notice of a better offer during the pendency of its petition, and anticipates a recovery in excess of $20,000.

### d.     Other Property

The Receiver has further identified certain office related property and records of the Source Entities in California and, working with the SEC, has obtained an inventory of the same. Evaluation of their value continues and the Receiver has not yet determined a course of action with respect to this property and these records.

### 3.     Assets Abandoned

On November 12, 2010, the Receiver, with the assistance of the U.S Marshals, inspected two storage units in Philadelphia, Pennsylvania rented in the names of Relief Defendants Michael Stinson and Christine Stinson.  The storage unit belonging to Michael Stinson contained used and damaged office furniture and equipment.  The Receiver memorialized the contents of the unit and determined that the furniture and equipment had little or no value and that the items should be abandoned, particularly in light of the additional cost to move and secure such items. The storage unit belonging to Christine Stinson contained personal items, which the Receiver determined had little or no value.  These items were likewise abandoned.

## C.     ASSET RECOVERY - ANTICIPATED ASSETS NOT YET IN THE POSSESSION OF THE RECEIVERSHIP ESTATE

### 1.     Real Property

The Receiver anticipates that a number of other real properties will be determined to be Receivership Property.  These include properties in Philadelphia, Pennsylvania, one property in San Diego, California, and one property in Jacksonville, Florida.  The investigation into these properties is ongoing, and the Receiver is unable to estimate their value at the present time. Where appropriate, the Receiver intends to file Notice of the Receivership Orders in each County's Recorder of Deeds office.

2.        **Security Deposits**

The Receiver has determined that various third-parties hold deposits and/or pre-paid rent, received from the Source Entities.   These third-parties include the landlords of the Stinson Berwyn residence, a Philadelphia apartment rented by Susan Stinson, and various offices used by the Life's Good entities.   All deposit and/or rent holders have been contacted and forwarded copies of the Order Establishing Receivership Estate.   The Receiver is now in the process of negotiating the return of any such deposits and/or pre-paid rent.   To the extent that any landlord is unwilling to return funds rightfully belonging to the Receivership Estate, the Receiver will pursue an appropriate legal action, if the Receivership Estate continues.   The investigation into the value of these deposits and rent is ongoing.

3.        **Retirement Annuity Contract**

A retirement annuity contract held in the name of Relief Defendant Susan Stinson has been identified by the Receiver.   The Receiver has contacted the annuity provider and is currently investigating the propriety of a claim upon the contract.   The annuity is worth approximately $9,000.

4.        **Surety Bonds**

The Receiver, with the SEC's assistance, has located surety bonds in an aggregate amount of $200,000.   The Receiver has submitted Notice of Claims to the surety bond insurer and is attempting to negotiate a resolution.

## III.   RECEIVER'S POTENTIAL LITIGATION MATTERS

The Receiver has also identified at least $350,000.00 in Receivership Property held by Matthew L. Razzano, Esq. and his wife Tammi, in the form of a purported mortgage loan the couple received on or about April 29, 2010.  Specifically, the Receiver has learned that the Razzanos received a $350,000.00 transfer from the Life's Good S.T.A.B.L. Mortgage Fund in order to finance their purchase of a home located at 3980 Landisville Road in Doylestown, Pennsylvania.  Based on the Receiver's investigation thus far, the purported mortgage was not a *bona fide* loan, but was made in recognition of Matthew Razzano's years of work on behalf of Stinson and his various enterprises, including the Life's Good entities and affiliates that are the focus of the SEC's Complaint.  The Razzanos, unable to refinance the "loan," have reneged on an oral agreement to transfer the property to the Receiver.  The Receiver anticipates filing a Complaint against Matthew and Tammi Razzano, for the purpose of recovering the $350,000.00 and any additional Receivership Property transferred to or controlled by the Razzanos.  The Receiver additionally reserves the right to pursue other funds received by Matthew Razzano from the Source Entities, as deemed appropriate.

The Receiver presently is investigating potential claims against third-parties who promoted, advertised or, in any way, facilitated investments into the Life's Good funds.  Although the Receiver preliminarily believes that certain third-party claims may be meritorious, at this stage, it would be premature to assess the likelihood of success of any such claims, the cost/benefit of pursuing such claims, as well as whether such claims should be pursued under an hourly, fixed fee, contingency, or hybrid arrangement.

Based on discussions with the SEC, the Receiver is aware of numerous third-parties that received investments, loans and gifts of fraudulently-obtained funds or assets from the Source

Entities.  Pursuant to the Pennsylvania Fraudulent Transfer Act, 12 Pa. C.S. §§ 5104(a)(1) and 5109, the Receiver believes that he may compel repayment of these funds.  Accordingly, the Receiver has to date sent twenty-two (22) letters to third-party recipients demanding an accounting and repayment of funds from the Source Entities.  These twenty-two (22) letters concern transfers approximated to be in excess of $1.3 million.  Moreover, the Receiver has identified eighteen (18) additional third-parties to whom demands will be sent.  The Receiver has not determined the amount of funds transferred to the bulk of these eighteen, and the investigation is ongoing.  To the extent that the Receiver can approximate the amount transferred from the Source Entities, he estimates that these parties have received transfers in excess of $2 million. Where funds are not repaid, the Receiver retains the right to file suit seeking rescission of these fraudulent transfers.

The Receiver has additionally served thirteen (13) subpoenas to various financial institutions, entities and individuals in an effort to locate additional Receivership Property.  The Receiver is reviewing subpoenaed documents as they are received.

## IV.    INVESTOR INFORMATION

The Receiver is currently working with the SEC and corresponding directly with individual investors in an effort to compile the pertinent investor account information.  To this end, two hundred and seventy-two (272) Investor Questionnaires have been sent by the SEC to known investors.  At the present, the Receiver has received approximately sixty-five (65) completed Questionnaires.  These Questionnaires are intended to provide the Receiver with information regarding an investor's contact with the Source Entities, their investment therein, any distributions an investor may have received, as well as any other pertinent information. Given that the Receiver's knowledge of investor information remains largely incomplete, the

Receiver will not include in this Report a list of individual investor balances. The Receiver anticipates that he will be able to compile an investor list for the next report, should the Court permit the Receivership to continue. Based on the Receiver's investigation thus far, it is unlikely that there will be sufficient assets recovered to make investors whole. Nonetheless, should the Court permit, the Receiver will continue its efforts to recover assets for the benefit of these defrauded investors.

Additionally, the Receiver has received inquiries from IRA custodians regarding the value of investments with Life's Good, Inc., Life's Good STABL Mortgage Fund, LLC, Life's Good High Yield Mortgage Fund, LLC, Life's Good Capital Growth Fund, LLC, IA Capital Fund, LLC, and Keystone State Capital Corporation. The Receiver has responded to each inquiry, providing copies of the Orders Establishing Receivership Estate and Appointing Receiver, directing the custodian to the Receivership website, and informing them that the Receiver cannot currently provide a valuation as to any investment.

## V.   RECEIVER'S PLAN

Pursuant to Paragraph 38(H) of the Order Establishing Receivership Estate, the Receiver recommends that the Court order the continuation of the Receivership Estate. As set forth above, the Receiver has already located and seized a number of assets for the Estate. To the extent that these assets are presently illiquid, the Receiver, if permitted, intends to swiftly liquidate them in the upcoming quarter. Moreover, the Receiver is aware of additional assets, which, after further investigation, may become a part of the Receivership Estate. If permitted, the Receiver intends to locate these assets and take them into the custody of the Receivership. Lastly, the Receiver has determined that valid third-party claims may exist, and the Receiver, with the Court's permission, intends to pursue such actions in an attempt to add assets to the Receivership. For

17

additional detail, the Receiver has prepared a plan and estimated schedule of anticipated activities, attached as Exhibit B.

<div style="margin-left: 40%;">

Respectfully submitted,

**PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP**

By:   /s/ Gaetan J. Alfano _____
         GAETAN J. ALFANO, ESQUIRE
         J. PETER SHINDEL, JR., ESQUIRE
         I.D. Nos. 32971 and  201554
         1818 Market Street, Suite 3402
         Philadelphia, PA  19103
         (215) 320-6200

*Attorneys for Kamian Schwartzman, Receiver*

</div>

Date:  January 14, 2011