IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

    v.

ROBERT STINSON, JR.
LIFE'S GOOD, INC.
LIFE'S GOOD STABL MORTGAGE FUND, LLC
LIFE'S GOOD HIGH YIELD MORTGAGE
    FUND, LLC
LIFE'S GOOD CAPITAL GROWTH FUND, LLC
IA CAPITAL FUND, LLC
KEYSTONE STATE CAPITAL CORPORATION

    Defendants, and

FIRST COMMONWEALTH SERVICE
    COMPANY
SUSAN L. STINSON
CHRISTINE A. STINSON
MICHAEL G. STINSON
LAURA MARABLE

    Relief Defendants.

CIVIL ACTION NO.
10-CV-03130 (BMS)


HON. BERLE M. SCHILLER


**SECOND QUARTERLY STATUS REPORT OF
KAMIAN SCHWARTZMAN, COURT APPOINTED RECEIVER**


Gaetan J. Alfano
J. Peter Shindel, Jr.
Pietragallo Gordon Alfano
Bosick & Raspanti, LLP
1818 Market Street, Suite 3402
Philadelphia, PA 19103
Telephone: (215) 320-6200
Facsimile: (215) 981-0082

## TABLE OF CONTENTS

I.      INTRODUCTION ...........................................................................................1

II.     OVERVIEW OF THE RECEIVER'S ACTIVITIES ...........................................3

    A.   ASSET RECOVERY – ASSETS IN THE POSSESSION,
        CUSTODY AND CONTROL OF THE RECEIVERSHIP ESTATE .............4

        1.   Liquid Assets ...........................................................................4

        2.   Illiquid Assets .........................................................................6

            a.   Real Property .............................................................6

            b.   Other Property ...........................................................6

    B.   ASSET RECOVERY – ANTICIPATED ASSETS NOT YET IN
        IN THE POSSESSION OF THE RECEIVERSHIP ESTATE .....................7

        1.   Pending Litigation.....................................................................7

        2.   Real Property ...........................................................................9

        3.   Security Deposits and Pre-paid Rent .......................................9

        4.   Insurance Policies and Surety Bonds......................................10

        5.   Retirement Annuity Contract..................................................10

    C.   ADMINISTRATIVE TASKS AND MISC. LEGAL TASKS.....................11

        1.   Website ...................................................................................11

        2.   Tax Obligations.......................................................................11

        3.   Status of Creditor Claims........................................................11

        4.   Interviews and Depositions with Interested Parties ...............12

        5.   Miscellaneous Court Filings ...................................................13

        6.   Forensic Accounting ...............................................................15

        7.   Subpoenas ...............................................................................15

i

III.    RECEIVER'S POTENTIAL LITIGATION MATTERS ......................................15

IV.    INVESTOR INFORMATION ..............................................................................16

V.    RECEIVER'S PLAN ...........................................................................................17

Kamian Schwartzman (the "Receiver"), the Court appointed Receiver with control over the assets and records of Robert Stinson, Jr., Life's Good, Inc., Life's Good STABL Mortgage Fund, LLC, Life's Good High Yield Mortgage Fund, LLC, Life's Good Capital Growth Fund, LLC, IA Capital Fund, LLC, Keystone State Capital Corporation, First Commonwealth Service Company, Susan L. Stinson, Christine A. Stinson, Michael G. Stinson, and Laura Marable (the "Source Entities") files his Second Report in accordance with the Court's Order Establishing Receivership Estate of September 13, 2010, as supplemented by this Court's Order dated April 27, 2011, and reports to the Court as follows:

I.      **INTRODUCTION**

On June 29, 2010, the Securities and Exchange Commission ("SEC") filed a complaint against Defendants, Robert Stinson, Jr. ("Stinson"), Life's Good, Inc., Life's Good STABL Mortgage Fund, LLC, Life's Good High Yield Mortgage Fund, LLC, Life's Good Capital Growth Fund, LLC, IA Capital Fund, LLC, and Keystone State Capital Corporation, alleging that Stinson, through his various entities, engaged in securities fraud and conducted a Ponzi scheme.  Particularly, the complaint alleges that since 2006 Stinson raised approximately $16 million from investors by falsely representing that his entities were successfully investing in various real estate ventures.  Instead of investing in real estate, Stinson was using the investor funds for speculative investments and for personal use and was transferring the funds to family members and others.  To this end, the SEC complaint also named First Commonwealth Service Company, Susan L. Stinson, Christine A. Stinson, Michael G. Stinson, and Laura Marable as Relief Defendants, and alleges that the Relief Defendants were unjustly enriched by receiving investor funds.

1

Also on June 29, 2010, the Court granted the SEC's *ex parte* Motion for a Temporary Restraining Order, freezing the assets of the Defendants and Relief Defendants.  On July 12 and 13, 2010, the Court entered, by consent, Orders of Preliminary Injunction (the "Freeze Orders") freezing the assets, inter alia, of the Source Entities, pending final determination of the action.[1]

On September 13, 2010, upon motion by the SEC, the Court entered Orders Establishing Receivership Estate (Docket No. 29) and appointing Kamian Schwartzman as Receiver (Docket No. 30) (collectively the "Receivership Orders").    Pursuant to the Order Establishing Receivership Estate, the Court took jurisdiction and possession over all Receivership Property, which is defined as "the assets, including without limitation monies, securities, choses in action, and properties, both real and personal, tangible and intangible, of whatever kind and wherever situated, of the Defendants and Relief Defendants . . . and/or any entities that the Source Entities own or control, or in which any of them have an interest, as well as any other assets that may be collected in the captioned matter."  Additionally, the court took jurisdiction and possession over any records, computers and documents relating to Receivership Property, as Receivership Records.  The Order Establishing Receivership Estate further provides that the Receiver is charged with using reasonable efforts to determine the location, nature and value of all Receivership Property and that the Receiver is required to take custody, control and possession of such property.  Moreover, the Receiver is charged to take actions in the interest of the Receivership Estate, including selling or otherwise disposing of Receivership Property.

On February 1, 2011, the SEC requested and the Clerk entered default against the Source Entities, for failing to plead or in any way respond to the Complaint.  A Motion for Partial Summary Judgment against the Defendants is currently pending (Docket No. 149).

---

[1] A  Preliminary Injunction was entered, by consent, as to Relief Defendant Laura Marable on July 23, 2010.

2

Pursuant to the Order Establishing Receivership Estate, the Receiver shall file a Quarterly Status Report within thirty (30) days of the end of each calendar quarter.  The Report must contain a summary of the Receiver's operations and detail the property and expenditures of the Receivership Estate.  Each Report shall also assess the future prospects of the Receivership and make a recommendation to the Court as to future action.

On January 14, 2011, the Receiver filed an Initial Report detailing the Receiver's activities from the Estate's inception and recommending that the Receivership should continue. The Receivership Estate held liquid assets of $172,433.20 at the filing of the Initial Report.  On January 18, 2011, the Court ordered the continuation of the Receivership Estate pursuant to the Receivership Orders.  On April 26, 2011, the Receiver requested an extension to file his Report, which the Court granted.  The Receiver now files a Quarterly Status Report for the quarter ending on March 31, 2011 (the "Reporting Period").[2]

## II.    OVERVIEW OF THE RECEIVER'S ACTIVITIES

During this Reporting Period, the Receiver has continued to locate Receivership Property and has disposed of Receivership Property in the best interests of the Receivership Estate, pursuant to the Receivership Orders.  The Receiver also has initiated several actions against third-parties that received fraudulent transfers from the Source Entities.  Finally, the Receiver has completed various administrative tasks required by law and necessary for the marshaling of Receivership Property.

---

[2] In order to provide the Court with an up-to-date report of the Receiver's activities, this Report shall include information up through the date of this filing.

A.   **ASSET RECOVERY – ASSETS IN THE POSSESSION, CUSTODY AND CONTROL OF THE RECEIVERSHIP ESTATE**

    1.   **Liquid Assets**

The Receivership currently has liquid assets in the amount of $505,691.38.[3,4]  See Exhibit A, attached.  As of the Initial Report, the Receivership held $172,433.20 in liquid assets.  This amount has increased by virtue of the private sale and public auction of personal property seized from the Source Entities as well as additional recoveries, as set forth below:

    *Private Sale*

Among the Receivership Property was a Bosendorfer piano that had been purchased by Stinson but was never delivered to him.  The Receiver determined that a private sale was the most cost-efficient method of disposition, and with the Court's approval, the Receiver agreed to sell the piano to Cunningham Piano Company for $21,000.00.

    *Public Auction*

Prior to this Reporting Period, the Receiver, with the assistance of the United States Marshal's Service, had seized personal property belonging to the Source Entities, including furniture, homewares, electronics, sports memorabilia, and ten (10) automobiles.  During this Reporting Period, the Receiver continued to locate Receivership Property by seizing the contents of offices formerly rented by Life's Good in Philadelphia and a storage unit rented by Stinson.  Also in this Reporting Period, the Receiver took possession of three (3) additional vehicles.  The Receiver successfully petitioned the Federal Bureau of Investigation for custody of a 2007

---

[3] $905.00 of the funds are held in a PNC Business Checking Account, and the remaining balance is kept in a PNC Money Market Account.
[4] The amount of liquid assets in the Receivership Estate is net of fees for the Receiver, which were paid pursuant to the Court's Order on February 24, 2011.  See Exhibit A.

Mercedes-Benz and 2010 Mercedes-Benz, titled to Stinson and his wife. The Receiver also identified a 2007 BMW, which was titled to a third-party but had been purchased with funds from the Source Entities. The titled owner, Traceé Davis, had received a no interest "loan" from Life's Good for $30,695.00, which was used to purchase the 2007 BMW. The Receiver seized the vehicle pursuant to the Receivership Orders and sought Court approval for its sale, which was granted on April 14, 2011.

With the exception of the QVC items mentioned below, the personal property seized pursuant to the Receivership Orders was offered for sale, with the help of Slosberg Auctioneers & Appraisers, at a public auction on April 17, 2011.[5] As a result of the auction, the Receivership received $227,116.76.[6]

*Additional Transfers*

In addition to the sale of personal property, the Receivership Estate contains an additional $7,515.48 in "payments on account" received from Matthew Razzano with respect to real property located in Doylestown, Pennsylvania.

Lastly, the Receiver determined that in June of 2010, Life's Good had transferred $107,454.87 to NG Productions for the production of an online television series. After an investigation into the use of those funds and in order to avoid litigation fees and expenses, the Receiver negotiated a settlement with NG Productions for $105,144.87. NG Productions then promptly transferred this amount to the Receiver on April 21, 2011.

---

[5] With the assistance of Slosberg Auctioneers, the Receiver determined that some items of seized personal property were not appropriate for sale. The Receiver is in the process of determining the most appropriate disposition for any such property, as well as the disposition of any property which was not sold at auction.

[6] The $227,116.76 received from the auction does not account for $6,483.25, which had been previously advanced by the Receiver to Slosberg Auctioneers. The Receiver will seek reimbursement for this expense from the Estate, when appropriate.

2.      **Illiquid Assets**

a.      **Real Property**

The Receivership Estate currently holds an ownership interest in at least five (5) real properties.  These properties include:

- Chesterbrook, Pennsylvania property: This single family townhouse in Chesterbrook, Pennsylvania, is currently subject to a mortgage foreclosure action for a mortgage originally in the amount of $276,000.  Given the pending foreclosure, the Receiver's investigation as to this property's value is ongoing.

- Reading, Pennsylvania property: This single family townhouse in Reading, Pennsylvania, was purchased by Defendant Life's Good STABL Mortgage Fund in 2008 for $125,000.  With the assistance of the United States Marshals Service, the Receiver has inspected and secured the property.  The Receiver is currently in the process of determining the most efficient method of disposition.

- Philadelphia, Pennsylvania property: This single family townhouse in Philadelphia, Pennsylvania, was obtained by Life's Good STABL Mortgage Fund in 2007.  The market value of this property was assessed by the Philadelphia Office of Property Assessment as $24,300, however the property is encumbered with judgment liens in excess of $9,000.  The Receiver is still investigating the value of this property in order to determine its most efficient disposition.

- Philadelphia, Pennsylvania property: This single family townhouse in Philadelphia, Pennsylvania, was obtained by Life's Good STABL Mortgage Fund in 2007.  The market value of this property was assessed by the Philadelphia Office of Property Assessment as $17,500.  The Receiver is still investigating the actual value of this asset and whether it is encumbered.

- Hyde County, North Carolina property:  Susan Stinson was deeded in 1978 a one-third (1/3) interest in a fifty-seven (57) acre farm in Hyde County, North Carolina.  Mrs. Stinson receives annual rental income from the farm tenants, pursuant to a Rent Agreement.  The farm tenants have been provided copies of the Receivership Orders and have been directed to forward any future rental payments to the Receiver.

b.      **Other Property**

When preparing for the public auction, the Receiver set aside any unopened or unused merchandise from QVC, which amounted to approximately 328 boxes that retailed for

6

$16,962.96.  The Receiver and QVC are currently negotiating a resolution for the return of this unopened or unused merchandise.

The Receiver has further identified certain office related property and records of the Source Entities in California and, working with the SEC, has obtained an inventory of the same. Evaluation of their value continues and the Receiver has not yet determined a course of action with respect to this property and these records.

The Receiver has also discovered that the Receivership purportedly holds an eleven percent (11%) equity interest in the FanWave Media, LLC, by virtue of $125,000.00 in transfers from the Source Entities from March 2010 to June 2010.  FanWave Media is purportedly a record label and music marketing company.  The Receiver is currently in the process of determining the value and appropriate disposition of this interest.

### B.   ASSET RECOVERY - ANTICIPATED ASSETS NOT YET IN THE POSSESSION OF THE RECEIVERSHIP ESTATE

#### 1.   Pending Litigation

During this Reporting Period, the Receiver has initiated eight (8) ancillary actions pursuant to the Receivership Orders.  All of these actions include claims under the Pennsylvania Fraudulent Transfer Act, 12 Pa. C.S. § 5104, and for unjust enrichment, in an attempt to recover funds that were transferred by the Source Entities to third-parties.  These actions include:

- <u>Schwartzman v. Razzano, et al.</u>, Civil Action No. 11-775: On February 1, 2011, the Receiver filed an ancillary complaint against Matthew Razzano, Tammi Razzano, and the Law Offices of Razzano & Kreutzer, LLC, under the Pennsylvania fraudulent transfer statute and for unjust enrichment in connection with $615,000.00 in transfers received from the Source Entities.  These transfers included a $350,000.00 "mortgage" from Life's Good to the Razzanos to purchase real property in Doylestown, Pennsylvania, as well as legal fees and expenses paid to the law firm by the Source Entities but for which the Source

Entities received no benefit. On March 16, 2011, the Receiver and the Razzanos agreed to partially resolve the Receiver's claims whereby the Razzanos will transfer either $350,000.00 or title to the Doylestown property to the Receiver no later than June 30, 2011. The Receiver's claims for $265,000.00 of fraudulent transfers still remain, and the case is currently in the midst of discovery.

- <u>Schwartzman v. Hutchison,</u> Civil Action No. 11-1349: On February 25, 2011, the Receiver filed an ancillary action against Janet Hutchison under the Pennsylvania fraudulent transfer statute and for unjust enrichment in connection with $77,000.00 in transfers received from the Source Entities. In response to the complaint, Hutchison filed a motion to dismiss for lack of personal jurisdiction, which the Court subsequently denied. Hutchison filed an Answer on April 29, 2011, and the Receiver intends to commence discovery imminently.

- <u>Schwartzman v. Harris, et al.,</u> Civil Action No. 11-1354: On February 28, 2011, the Receiver filed an ancillary complaint against Michael Harris, Best Sports Consultants, LLC, Traceé Davis, Emily Peebles, and Eric Lawton, Jr. under the Pennsylvania fraudulent transfer statute and for unjust enrichment in connection with $173,679.75 in transfers received from the Source Entities. All of the Defendants have answered the complaint, with the exception of Lawton, who was only recently served. The Receiver intends to commence discovery imminently.

- <u>Schwartzman v. Shiloh Outreach Church of the Apostolic Faith, et al.,</u> Civil Action No. 11-1764: On March 10, 2011, the Receiver filed an ancillary action against Shiloh Outreach Church of the Apostolic Faith, Robert Stinson, Sr. (Stinson's father), and Alice Stinson (Stinson's mother) under the Pennsylvania fraudulent transfer statute and for unjust enrichment in connection with $94,250.00 in transfers received from the Source Entities. The Defendants have responded to the complaint, <u>pro se,</u> and the Receiver intends to move for summary judgment as soon as practicable.

- <u>Schwartzman v. Robertson,</u> Civil Action No. 11-1765: On March 10, 2011, the Receiver filed an ancillary complaint against Michael Robertson, Relief Defendant Susan Stinson's son, under the Pennsylvania fraudulent transfer statute and for unjust enrichment in connection with $64,272.56 in transfers received from the Source Entities. Robertson failed to plead or otherwise respond to the complaint, and the Receiver requested an entry of default on April 26, 2011. The Receiver intends to proceed with a Motion for Default Judgment as soon as practicable.

- <u>Schwartzman v. Turcotte,</u> Civil Action No. 11-1912: On March 17, 2011, the Receiver filed an ancillary action against Nicole Turcotte under the Pennsylvania fraudulent transfer statute and for unjust enrichment in connection with $173,475.00 in transfers received from the Source Entities. Turcotte responded to the complaint by filing a motion to dismiss for lack of personal jurisdiction, which the Court denied on May 9, 2011. The Receiver is awaiting Turcotte's Answer.

- <u>Schwartzman v. Williams, et al.</u>, Civil Action No. 11-2693: On April 21, 2011, the Receiver filed an ancillary action against Doug Williams and Doug Williams Entertainment, Inc., under the Pennsylvania fraudulent transfer statute and for unjust enrichment in connection with $63,300.00 in transfers received from the Source Entities. The Receiver is currently in the process of effecting service upon the Defendants.

- <u>Schwartzman v. Ganong, et al.</u>, Civil Action No. 11-2782: On April 26, 2011, the Receiver filed an ancillary action against Pamela Ganong, Relief Defendant Susan Stinson's sister, and her family Phillip Ganong, William Ganong, and Joseph Ganong, under the Pennsylvania fraudulent statute and for unjust enrichment in connection with $104,772.56 in transfers received from the Source Entities. The Receiver is currently in the process of effecting service upon the Defendants.

### 2.    Real Property

The Receiver anticipates that other real properties will be determined to be Receivership Property. These include potential properties in Philadelphia, Pennsylvania and one property in Jacksonville, Florida. The investigation into these properties is ongoing, and the Receiver is unable to estimate their value at the present time.

### 3.    Security Deposits and Pre-paid Rent

As stated in the Initial Report, the Receiver has determined that several third-parties hold deposits and/or pre-paid rent that was received from the Source Entities. These third-parties include, without limitation, the landlords of the Stinsons' former residence, and the landlords or rent collectors of a Philadelphia apartment rented by Susan Stinson and various offices used by the Life's Good entities.

Due to a lack of cooperation by Diane Henderson, the landlord of the Stinsons' former residence, the Receiver has filed a motion to compel the surrender of the $25,500.00 security deposit and pre-paid rent. Henderson has since responded to the Receiver's motion, and it is currently pending before the Court.

The Receiver is also in the process of negotiating with the Condominium Association of 1216 Arch Street, which received a $78,000.00 payment from Life's Good purportedly in connection with a condominium that Life's Good never occupied.

With respect to the additional deposits and/or pre-paid rent, the investigation into their value is ongoing. To the extent that any landlord is unwilling to return funds rightfully belonging to the Receivership Estate, the Receiver will pursue the appropriate legal action.

### 4.      Insurance Policies and Surety Bonds

As mentioned in the Initial Report, the Receiver has located surety bonds in an aggregate amount of $200,000.  The Receiver has submitted Notice of Claims to the surety bond insurer and is still attempting to negotiate a resolution.

The Receiver has located additional insurance policies held by the Source Entities and related individuals or entities.  The Receiver is currently in the process of evaluating any claim he may have against these policies.

### 5.      Retirement Annuity Contract

A retirement annuity contract held in the name of Relief Defendant Susan Stinson has been identified by the Receiver.  The Receiver has contacted the annuity provider and is continuing to investigate the propriety of a claim upon the contract.  The annuity is worth approximately $9,000.

## C.     ADMINISTRATIVE TASKS AND MISCELLANEOUS LEGAL TASKS

### 1.     Website

In continued compliance with the Receivership Orders, the Receiver has maintained and updated the Receivership website (http://www.lifesgoodfundsreceivership.com), which is intended to inform investors and the general public of the status of the Receivership Estate.

### 2.     Tax Obligations Regarding Life's Good Employees

The Receiver has fielded inquiries by former Life's Good employees regarding the status of W-2's and tax related documentation.  The Receiver has informed any such employees of the Receiver's inability to provide complete tax information and has directed them to contact the appropriate tax authority.

### 3.     Status of Creditor Claims

As stated in the Initial Report, the Receiver has responded to inquiries from creditors of the Source Entities by informing them of the Receivership Orders.  The Receiver has also compiled a list of all known creditors and the amounts of their claims.  If appropriate, the Receiver will request Court approval of a claims procedure, of which all known creditors will be notified.  The Receiver has determined that adopting any such procedure would be premature at this stage, however the Receiver will update the Court regarding the status of Creditor Claims Proceedings in the next Quarterly Report.

During this period, the Receiver has successfully discharged one significant debt of the Source Entities, specifically a rent judgment of $49,780.00, in favor of 600 N. 3rd Street Associates, L.P.  This judgment was entered against Life's Good, Inc., on or about September 28, 2010, in the Philadelphia Municipal Court, for unpaid rent and utilities for Life's Good's rental of the premises located at 600 N. 3rd Street in Philadelphia.  Upon learning of the

11

judgment, the Receiver filed a Motion to Strike with the Municipal Court, and the landlord has agreed to vacate their judgment against Life's Good in exchange for the Receiver disclaiming any interest in the premises.

### 4.    Interviews and Depositions with Interested Parties

In an effort to locate Receivership Property and Records and to further his investigation, the Receiver has conducted a number of interviews and depositions with interested parties. These interviews and depositions include:

- Michael Robertson, the son of Relief Defendant Susan Stinson, who had previously worked for Life's Good and who had received funds from the Source Entities. The Receiver has since filed an ancillary complaint against Robertson seeking to recoup the funds he received.

- Aron Martinez, who received funds in the amount of $265,170.00 from the Source Entities. The Receiver and Martinez are currently negotiating a settlement as to the Receiver's potential claims against him.

- Rick Hollis, who had received funds in the amount $41,000.00 from the Source Entities. The Receiver and Hollis are currently negotiating a settlement as to the Receiver's potential claims against him.

- Joshua Kotzen, a former employee of Eclipse Channel, which was represented as an affiliate to Life's Good. Kotzen had contact with Stinson subsequent to entry of the Freeze Orders.

- Michael Bailey, Jr., who was also purportedly affiliated with Life's Good. Bailey likewise had contact with Stinson following the Freeze Orders.

- Andrea Perneczky, an associate of Stinson's, who had received the benefit or funds from the Source Entities amounting to at least $12,000.00 and who has had substantial contact with Stinson since the Freeze Orders. The Receiver has demanded repayment of the $12,000.00 from Perneczky.

- Charles Ireland, a former employee of Life's Good and co-founder of Intergen International, LLC, which was purportedly affiliated with Life's Good. The commercial space used by Intergen was occupied by Stinson following the Freeze Orders.

12

### 5.    Miscellaneous Court Filings

Throughout the course of his investigation, the Receiver has discovered that Stinson and his wife have acted in repeated violation of the Freeze Orders and Receivership Orders by failing to disclose accounts and funds and by establishing corporate entities to hide assets and solicit additional money.  In an effort to stop Stinson and his wife's violative conduct, the Receiver has filed three sets of motions to enforce the Freeze Orders and Receivership Orders.

On February 23, 2011, the Receiver filed a Motion to Enforce the Order Establishing Receivership Estate and to Hold Susan Stinson in Contempt.  Generally, the Motion alleges that approximately two days after the Freeze Orders, Mrs. Stinson began hiding assets from the SEC, the Court and the Receiver.   Mrs. Stinson used the undisclosed funds, amounting to approximately $78,038.95, for vacations, a pre-paid deposit and rent for a luxury apartment for her son, rent for her Main Line mansion, and other miscellaneous expenses.  In his Motion, the Receiver requested that Mrs. Stinson be imprisoned until she complied with the Court's previous Orders and provided the Receiver with a full and complete accounting.   The Receiver additionally requested that Mrs. Stinson be fined in the amount of $78,038.95.  As a result of the Receiver's Motion, the Court ordered Mrs. Stinson to comply with the Freeze Orders and Order Establishing Receivership no later than March 17, 2011, and appointed Ellen C. Brotman, Esquire, as Mrs. Stinson's counsel.  As of the filing of this Report, the Court has not yet ruled on the Receiver's Motion, and Mrs. Stinson has not provided a full and complete accounting.  On April 19, 2011, Mrs. Stinson was charged by criminal information by the United States Attorney's Office for the Eastern District of Pennsylvania with two counts of obstruction of justice and one count of making false statements in connection with her concealment of assets from the SEC, Criminal Action No. 11-235.

On March 23, 2011, the Receiver filed a Motion for Contempt against Stinson. According to this Motion, Stinson, like his wife, violated the Freeze Order and Receivership Orders by failing to disclose: (1) accounts held in his name; (2) funds he personally received and spent; and (3) substantial expenditures that were made for his benefit.  As in the contempt motion against Susan Stinson, the Receiver requested that Stinson be imprisoned and/or fined in order to compel his compliance with the Court's Orders.  A hearing on this Motion for Contempt was scheduled for May 3, 2011, but in light of the revocation of Stinson's bail in his criminal case, as discussed below, the Receiver requested that the hearing be postponed indefinitely.

Lastly, the Receiver discovered that, since the entry of the Freeze Orders, Stinson had been actively soliciting funds in connection with Eclipsechannel.tv Global Broadcasting Network, Inc.[7]  Stinson had secured the services of individuals formerly affiliated with Life's Good to design and promote Eclipsechannel.tv, with the apparent goal of soliciting advertising revenue.  The Receiver also learned that Stinson had used the Eclipsechannel.tv entity to launder funds used for personal expenses in violation of the Freeze Orders and Receivership Orders. Upon discovery of Stinson's efforts, the Receiver filed an *Ex Parte* Motion for Temporary Restraining Order and Preliminary Injunction requesting the Court to enjoin the Source Entities, and non-parties acting in concert with the Source Entities, from operating Eclispechannel.tv, soliciting any funds for the entity and disbursing funds for the benefit of the entity.  The Court entered a Preliminary Injunction on March 25, 2011, and a Permanent Injunction on April 13, 2011.  This Motion, along with the contempt motion against Stinson, was shared with the U.S. Attorney's Office.  Subsequently, the U.S. Attorney's Office moved to revoke Stinson's bail,

---

[7] Eclipsechannel.tv Global Broadcasting Network, Inc., appears to be a continuation of Eclipse Channel Online Network, Inc., which was affiliated to Life's Good and which ceased operations upon the filing of the SEC Complaint and Motion for Temporary Restraining Order.

which was granted on April 27, 2011.  The Receiver assisted the U.S. Attorney's Office insofar as the Receiver determined that Stinson's continued activity presented a liability to the Estate and threatened to further dissipate potential assets.

### 6.   Forensic Accounting

The Receiver is currently evaluating the need for a forensic accounting and business valuation firm.  If and when appropriate, the Receiver will request Court permission to engage any such firm.

### 7.   Subpoenas

During this Reporting Period, the Receiver has issued subpoenas to twenty-six (26) individuals and entities in his continued effort to locate Receivership Property and Receivership Records.

## III.   RECEIVER'S POTENTIAL LITIGATION MATTERS

The Receiver presently is investigating potential claims against third-parties and has identified at least five (5) other persons or entities which received fraudulent transfers from the Source Entities, amounting to roughly $1.3 million.  The Receiver is still in the process of determining the full value of any claims against these individuals or entities, and will continue to investigate any additional third-party recipients of funds.  The Receiver anticipates initiating litigation against these parties prior to the next Quarterly Status Report.

In addition to recipients of fraudulent transfers, the Receiver is investigating potential claims against individuals and/or entities who promoted, advertised or, in any way, facilitated investments into the Life's Good funds.  The Receiver is currently evaluating the cost and benefit

of pursuing these claims, as well as whether to recommend to the Court that these claims should be pursued under an hourly, fixed fee, contingency, or hybrid arrangement.

The Receiver has further identified eleven (11) individuals who received "loans," from the Source Entities amounting collectively to $230,686.85.  The Receiver has contacted each individual and demanded repayment of the funds.  Where the funds are not repaid, the Receiver retains the right to file suit seeking rescission of these fraudulent transfers.

## IV.   INVESTOR INFORMATION

The Receiver continues to work with the SEC and to correspond directly with individual investors in an effort to compile the pertinent investor account information.  As mentioned in the Initial Report, two hundred and seventy-two (272) Investor Questionnaires were sent by the SEC to known investors.  At the present, the Receiver has received approximately one hundred and seventy-one (171) completed Questionnaires.  These Questionnaires are intended to provide the Receiver with information regarding an investor's contact with the Source Entities, their investment therein, any distributions an investor may have received, as well as any other pertinent information. As the Receiver's knowledge of investor information still remains substantially incomplete, the Receiver will not include in this Report a list of individual investor balances.  The Receiver hopes to compile an investor list for the next Quarterly Status Report, depending on the percentage of outstanding Questionnaires.   Based on the Receiver's investigation thus far, it is premature to assess whether there will be any distribution, much less sufficient assets recovered to make investors whole, however, and as further set forth in Section V, below, with the Court's permission, the Receiver intends to continue his efforts to recover assets for the benefit of these defrauded investors.

Additionally, the Receiver has received inquiries from IRA custodians regarding the value of investments with the Life's Good funds. The Receiver has responded to each inquiry, providing copies of the Receivership Order, directing the custodian to the Receivership website, and informing them that the Receiver cannot currently provide a valuation as to any investment.

## V.    RECEIVER'S PLAN

Pursuant to the Order continuing the Receivership, entered by the Court on January 18, 2011 (Docket No. 70), the Receiver recommends that the Court order the continuation of the Receivership Estate. As set forth above, the Receiver has already seized and liquidated a number of assets, particularly personal property, for the Estate. The Receiver further intends to efficiently dispose of assets still in the custody of the Receivership, such as real or intangible property, as well as any other assets that may be located. Pursuant to his duties under the Receivership Orders, the Receiver has initiated eight (8) ancillary actions against third-parties that have received stolen investor funds amounting to approximately $1.3 million. Moving forward, the Receiver intends to pursue those claims in an effort to maximize the recovery for the defrauded investors. Moreover, the Receiver anticipates instituting additional litigation, as discussed above, in an attempt to add assets to the Receivership. For additional detail, the Receiver has prepared a plan and estimated schedule of anticipated activities, attached as Exhibit B.

As set forth in the accompanying proposed order continuing the Receivership, in his next report, the Receiver will again, as practicable, assess for the Court the future prospects of success of the Receivership and, in particular, whether the Receivership is reasonably likely to amass sufficient (net) assets to warrant a distribution to defrauded investors; provide to the Court a recommendation as to future action, if any, toward the goal of marshaling sufficient assets to

return funds to defrauded investors; and provide the information required under paragraphs 38-40 of the Order Establishing Receivership Estate.

The SEC has been provided a copy of this Report, and the SEC does not oppose the continuation of the Receivership.

Respectfully submitted,

**PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP**

By: _____

GAETAN J. ALFANO, ESQUIRE
J. PETER SHINDEL, JR., ESQUIRE
I.D. Nos. 32971 and 201554
1818 Market Street, Suite 3402
Philadelphia, PA 19103
(215) 320-6200

*Attorneys for Kamian Schwartzman, Receiver*

Date: May 11, 2011

18