IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ROBERT STINSON, JR., LIFE'S GOOD, INC., | : | |
| LIFE'S GOOD STABL MORTGAGE FUND, LLC, | : | |
| LIFE'S GOOD HIGH YIELD MORTGAGE | : | |
| FUND, LLC, LIFE'S GOOD CAPITAL GROWTH | : | |
| FUND, LLC, IA CAPITAL FUND, LLC, and | : | |
| KEYSTONE STATE CAPITAL CORPORATION, | : | |
| Defendants, and | : | |
| | : | |
| FIRST COMMONWEALTH SERVICE COMPANY, | : | |
| SUSAN L. STINSON, CHRISTINE A. STINSON, | : | |
| MICHAEL G. STINSON, and LAURA MARABLE, | : | No. 10-3130 |
| Relief Defendants. | : | |

## MEMORANDUM

**Schiller, J.**                                                                                                  **June 20, 2011**

The Securities and Exchange Commission brings this action against Robert Stinson, Jr. and a number of entities associated with him. Defendants, proceeding pro se in this matter, have not responded to the SEC's Complaint. Two months after the Clerk of Court entered default against Defendants, the SEC filed the motion for partial summary judgment presently before the Court. The SEC also requests a permanent injunction barring Defendants from committing future violations of federal securities laws. Defendants have not responded to this motion. The Court will grant the motion for the reasons stated below.

## I. BACKGROUND

### A. Stinson and the Life's Good Funds

Robert Stinson, Jr. is an officer of the "Life's Good Funds," six corporations organized in

various states between 2005 and 2009: (1) Life's Good, Inc.; (2) Keystone State Capital Corporation; (3) Life's Good STABL Mortgage Fund, Inc.; (4) Life's Good Capital Growth Fund, LLC; (5) Life's Good High Yield Mortgage Fund, LLC; and (6) IA Capital Fund, LLC. (Pl.'s Mot. for Partial Summ. J. Ex. 3, June, 29, 2010 Decl. of Daniel Koster [June 2010 Koster Decl.] ¶¶ 11-18.) Defendants claimed to generate income through real estate investments. (*See, e.g., id*. ¶¶ 21, 31, 39.) They sold "units" of the Life's Good Funds, charging between $2,000 to $5,000 per "unit." (*Id*. ¶ 31.)

An SEC investigation revealed that Defendants solicited investments in the Life's Good Funds between 2006 and 2010, obtaining over $17 million from over 262 investors. (Pl.'s Mot. for Partial Summ. J. Ex. 2, Sept. 8, 2010 Decl. of Daniel Koster ¶ 5.) Defendants contacted potential investors via e-mail, the Internet, and phone calls. *(See, e.g.,* June 2010 Koster Decl. ¶¶ 12, 27, 37-38, 47.) In their promotional material, Defendants represented that the Life's Good Funds reliably produced returns of 14 to 16 percent through real estate investments, including loan-fee and interest income from the sale of investment properties, and from foreclosure sales. (*Id*. ¶¶ 42, 47.)

The SEC discovered that neither Stinson nor the Life's Good Funds held any significant real estate assets. (*Id*. ¶ 20.) Nor had Stinson or the Life's Good Funds ever registered as or associated with a broker-dealer or investment advisor. (*Id* ¶ 19.) An SEC records search also revealed that the Commission never received registration statements for the Life's Good Funds. (*Id*.; Pl.'s Mot. for Partial Summ. J. Ex. 4, SEC Registration Records.)

B.    **The Life's Good Ponzi Scheme**

An SEC accountant, Daniel Koster, analyzed relevant bank records covering activity from April 1, 2009 through May 31, 2010 (the "Transaction Period"). These records

demonstrated that the Life's Good Funds used over twenty separate bank accounts; Stinson controlled and was a signatory for each of these accounts. (*Id*. ¶ 58.) The Life's Good Funds received deposits of investor funds from self-directed IRA accounts. (*Id*. ¶ 62.) During the Transaction Period, they received at least 150 investments through IRA custodians. (*Id*. ¶ 64.)

These investments totaled at least $9.2 million. The SEC's investigation revealed that $9,223,083 was then distributed from the Life's Good Funds' accounts. (*Id*. ¶ 68.) New investments were used to pay periodic "distributions" to other investors. (*Id*. ¶ 69.) Defendants also used investor funds to pay their expenses. (*Id*.)

The SEC also discovered large cash distributions to Stinson and his relatives. (*Id*. ¶ 71.) Investor deposits paid for steakhouse dinners, vacations, and a Mercedes Benz. (*Id*. ¶ 72.) Stinson also used assets of the Life's Good Funds to pay for his daughter's college tuition and to buy automobiles for his son and daughter-in-law. (Sept. 2010 Koster Decl. ¶ 8.)

### C. Procedural History

The SEC filed its Complaint on June 29, 2010. Defendants subsequently consented to a preliminary injunction freezing their assets. The Court established a Receivership Estate and appointed a Receiver on September 13, 2010. Although their answers or other responses were due on September 23, 2010, Defendants failed to appear, plead, or otherwise defend in this action. The SEC moved for entry of default on February 1, 2011, which the Clerk of Court entered against Defendants that day.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed.

R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the moving party bears the burden of persuasion at trial, it must identify evidence in the record establishing the absence of a genuine factual issue. *Nat'l State Bank v. Fed. Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir. 1992). In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

Defendants have not responded to the SEC's Motion for Partial Summary Judgment. Nevertheless, the Court must consider the merits of the unopposed motion. *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991); *see also McCollum v. Doe*, Civ. A. No. 09-5622, 2011 WL 53066, at *1-2 (E.D. Pa. Jan. 7, 2011). However, as Defendants have failed to address the SEC's assertions of fact, the Court will consider these facts undisputed. Fed. R. Civ. P. 56(e); *see also* Local R. Civ. P. 7.1(c); *Bank of Am., N.A. v. Colony Park at Benders Church*, *LP*, Civ. A. No. 09-705, 2011 WL 925411, at *3 (E.D. Pa. Mar. 17, 2011).

### III.   DISCUSSION

The SEC alleges Defendants violated Sections 5(a), 5(c), and 17(a) of the Securities Act, as well as Section 10(b) of the Exchange Act and Rule 10b-5. The record contains sufficient undisputed facts to warrant summary judgment for the SEC on each of these claims.

#### A.   Securities Registration Claims

Section 5(a) of the Securities Act makes it unlawful for any person to sell a security in

interstate commerce without a registration statement for that security. 15 U.S.C. § 77e(a); *see also SEC v. Cavanagh*, 445 F.3d 105, 111 (2d Cir. 2006). Section 5(c) extends this prohibition to those who offer to sell such securities. 15 U.S.C. § 77e(c); *see also SEC v. U.S. Funding Corp.*, Civ. A. No. 02-2089, 2006 WL 995499, at *5 (D.N.J. Apr. 11, 2006). To state a Section 5 claim, a plaintiff must thus show: (1) lack of a registration statement for the securities; (2) the offer or sale of the securities; and (3) the use of interstate transportation or communication and the mails in connection with the offer or sale. *SEC v. Empire Dev. Grp., LLC*, Civ. A. No. 07-3896, 2008 WL 2276629, at *7 (S.D.N.Y. May 30, 2008) (citations omitted). Courts employ a burden shifting analysis in evaluating Section 5 claims: if a plaintiff makes out a prima facie case for a Section 5 violation, the defendant then bears the burden of proving the applicability of an exemption. *Id*. (citing *Cavanagh*, 445 F.3d at 111 n.13).

The fund "units" Defendants sold are securities within the meaning of the Securities Act. *See* 15 U.S.C. § 77b(a)(1); *see also SEC v. Young*, Civ. A. No. 09-1634, 2011 WL 1376045, at *6 (E.D. Pa. Apr. 12, 2011). The SEC has established that Defendants failed to register them. (*See* June 2010 Koster Decl. ¶ 19; SEC Registration Records.) The SEC has also shown that Defendants used the means of interstate commerce in connection with the offer and sale of "units" in the Life's Good Funds, including the Internet. *Cf. Gibbons v. Nat'l Real Estate Investors, LC*, Civ. A. No. 07-990, 2011 WL 1086364, at *2 (D. Utah Mar. 23, 2011) (concluding that defendant's telephone and email communications and wire transfers satisfied interstate commerce requirement); *U.S. Funding Corp.*, 2006 WL 995499, at *6 (holding that defendant's use of mails and Internet satisfied interstate commerce requirement.)

The SEC has thus established that Defendants violated Section 5. Defendants have offered no evidence that they may invoke an exemption to Section 5's registration requirements.

The Court will therefore grant the SEC's motion with respect to its Section 5 claims.

### B. Securities Fraud Claims

The SEC seeks summary judgment on its claims under Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5. Collectively, these provisions prohibit fraud in connection with the offer, purchase, or sale of securities. *See, e.g., Young*, 2011 WL 1376045, at *5. To prevail on its claims under Section 17(a)(1), Section 10(b) and Rule 10b-5, the SEC must establish that a defendant: (1) made false and misleading statements or omissions of material fact, or otherwise employed a device, scheme or artifice to defraud, or engaged in any transaction, practice, or other course of business which operated as a fraud or deceit; (2) engaged in such behavior in connection with the offer, purchase or sale of securities; (3) used the mails or an instrumentality of interstate commerce; and (4) acted with the requisite scienter. *Id*. However, the SEC need not establish scienter with respect to its claims under Sections 17(a)(2) or 17(a)(3). *Id*. (citing *Aaron v. SEC*, 446 U.S. 680, 695, 697 (1980)).

As discussed above, the SEC has established that Defendants used various means of interstate commerce in connection with their conduct, including wire transfers, web sites, and e-mail. The SEC has also shown that Defendants' conduct satisfies the remaining three factors.

#### 1. *False and misleading statements or omissions of material fact*

A fact is material for these purposes if there is a substantial likelihood that a reasonable investor would consider it important when making an investment decision. *See, e.g., S.E.C. v. Roor*, Civ. A. No. 99-3372, 2004 WL 1933578, at *4 (S.D.N.Y. Aug. 30, 2004). The SEC has shown that Defendants made a number of false and misleading statements and omissions of material fact regarding both the Life's Goods Funds' operations and Stinson's background.

### a. Fund operations

Defendants represented that the Life's Good Funds generated client returns through loan-fee and interest income via property sales. (June 2010 Koster Decl. ¶ 42.) Stinson also appeared in a "webinar" available on the Internet during which he stated that "every single dollar" of the STABL Fund was invested in real estate. (*Id*. ¶¶ 37-39.) In fact, the SEC discovered that client returns were often generated by shifting new investments to fund distributions to existing investors. (*See id*. ¶¶ 69, 73.) The STABL Fund, meanwhile, also covered Defendants' operating expenses and transferred money directly to Stinson's friends and family. (*Id*.) No Defendant appears to have had any significant real estate holdings. (*Id*. ¶ 20.)

Defendants promoted the Life's Good Funds by referencing real estate investments that did not exist while diverting investor funds to perpetuate a Ponzi scheme. These misrepresentations were material. Defendants failure to disclose that investor funds would be used to pay for personal expenses was also a material omission. *Cf. U.S. Funding Corp.*, 2006 WL 995499, at *4.

### b. Stinson's criminal and financial history

Promotional materials for the Life's Good Funds describe Stinson as the business's chief executive officer. (June 2010 Koster Decl. ¶ 30.) Stinson has a criminal history. Between 1986 and 2001, Stinson was convicted of or pled guilty to charges of criminal conspiracy, mail fraud, larceny, and forgery. (June 2010 Koster Decl. ¶¶ 8-9.) He has also twice filed for bankruptcy. (*Id*. ¶ 10.) Defendants did not disclose these facts to investors or potential investors. (*Id*. ¶ 57.) Rather, Defendants described their management team, including Stinson, as having "vast experience" and "a proven track record in generating high returns and profits" for "an extensive list of private investors." (*Id*. ¶ 41.)

Defendants' failure to disclose Stinson's criminal history was a material omission. *See SEC v. Prater*, 289 F. Supp. 2d 39, 52-53 (D. Conn. 2003). Given Defendants' emphasis on Stinson's business experience, their failure to disclose his prior bankruptcies was also materially misleading. *See SEC v. Merchant Capital*, LLC, 485 F.3d 747, 770-71 (11th Cir. 2007).

The record demonstrates that Defendants provided misleading information regarding the Life's Goods Funds' operations and Stinson's background. The SEC has thus satisfied the first element of its securities fraud claims under Section 17(a), Section 10(b) and Rule 10b-5.

### 2. *In connection with the offer, purchase or sale of securities*

A defendant makes a misstatement or omission "in connection with the offer, sale, or purchase of securities" when the misleading material is disseminated to the public in a medium upon which a reasonable investor would rely. *U.S. Funding Corp.*, 2006 WL 995499, at *5 (citing *Semerenko v. Cendent Corp.*, 223 F.3d 165, 176 (3d Cir. 2000)). Defendants communicated the material misstatements and omissions described above in: (1) direct solicitations via e-mail; (2) a webinar sponsored by an IRA custodian; and (3) various web sites. (June 2010 Koster Decl. ¶¶ 27; 37; 41-46.) The SEC has thus shown that Defendants' false statements and omissions were made to induce investors to purchase and retain their securities. *Cf. SEC v. Infinity Grp. Co.*, 993 F. Supp. 324, 329 (E.D. Pa. 1998) (concluding that investor literature's primary "purpose was to peddle defendants' fantasy securities," satisfying element of securities fraud claim).

### 3. *Scienter*

To prove scienter, the SEC must show that Defendants did not hold "a genuine belief that the information disclosed was accurate and complete in all material respects." *S.E.C. v. Chester Holdings, Ltd.*, 41 F. Supp. 2d 505, 521 (D.N.J. 1999) (quoting *In re Phillips Petroleum Sec.*

*Litig.*, 881 F.2d 1236, 1244 (3d Cir. 1989)). Either knowledge or recklessness will satisfy the scienter requirement. *SEC v. Teo*, Civ. A. No. 04-1815, 2010 WL 3184349, at *9 (D.N.J. Aug. 10, 2010) (citing *Phillips Petroleum*, 881 F.2d at 1244).

The SEC has documented Defendants' knowing and reckless misstatements and omissions. Stinson, for example, certainly knew about his own criminal record and bankruptcies. He must also have been aware of Defendants' failure to disclose this information. *See Prater*, 289 F. Supp. 2d at 54. Stinson's misstatements with respect to the Life's Good Funds' operations, coupled with his role in the business and direct management of the funds, also establishes scienter.

The Life's Good Funds, meanwhile, share Stinson's scienter as they are vehicles over which Stinson exercised complete control and through which Stinson conducted securities fraud. *See Young*, 2011 WL 1376045, at *6 (citing *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 381-82 (S.D.N.Y. 2007)). The SEC has thus established scienter with respect to all Defendants. Summary judgment is therefore appropriate on the SEC's securities fraud claims.

### C. The SEC's Request for Injunctive Relief

The SEC also seeks a permanent injunction barring Defendants from violating federal securities laws in the future. Courts may issue such injunctions upon a showing that: (1) a violation of federal securities laws has occurred; (2) there is a reasonable likelihood that the defendant will again engage in the illegal conduct if not enjoined. *Id.* at *9 (citing *SEC v. Bonastia*, 614 F.2d 908, 912 (3d Cir. 1980)). Factors relevant to this analysis include the degree of scienter involved, the isolated or recurrent nature of the violations, the defendant's recognition of the wrongful nature of his conduct, and the likelihood that future violations might occur because of the defendant's professional occupation. *Id.* (citation omitted).

9

The SEC has established that Defendants violated federal securities laws. The record indicates that Stinson is an unrepentant recidivist who continued to maintain the Ponzi scheme at issue in this case even after the SEC filed its Complaint. (*See* June 2010 Koster Decl. ¶ 6.) Indeed, as he earned his livelihood over a number of years by perpetrating securities fraud, one may characterize Stinson's "professional occupation" as engaging in illegal conduct. The Life's Good Funds, meanwhile, were Stinson-controlled vehicles used to defraud investors. As the evidence demonstrates a high likelihood that future violations will occur absent an injunction, the Court is satisfied that a permanent injunction is appropriate in this case.

## IV. CONCLUSION

The SEC has introduced undisputed evidence that Defendants violated federal securities laws. The Court will therefore grant the SEC's motion for partial summary judgment. As there is a high likelihood Defendants will again engage in such conduct, the Court will also grant the SEC's request for injunctive relief. An Order and permanent injunction consistent with this Memorandum will be docketed separately.