## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>      Plaintiff,<br><br>  v.<br><br>ROBERT STINSON, JR., et al.,<br><br>      Defendants/Relief Defendants. | CIVIL ACTION NO.<br>10-CV-03130 (BMS)<br><br><br>HON. BERLE M. SCHILLER |

## RECEIVER'S BRIEF IN OPPOSITION TO
## MORNINGSTAR'S MOTION FOR LEAVE TO FILE COMPLAINT

Receiver Kamian Schwartzman ("Receiver"), by and through his counsel, Pietragallo Gordon Alfano Bosick & Raspanti, LLP, files this Brief in Opposition to Morningstar, Inc.'s ("Morningstar's") Motion for Leave to File Complaint.

### I.    INTRODUCTION

On September 13, 2010, this Court entered its Order Establishing Receivership Estate. *See* Document No. 29. In that Order, the Court imposed a stay of litigation against any and all of the "Source Entities" in this suit.[1] As the Third Circuit has stated, the purpose of imposing such a stay of litigation is clear: "A receiver must be given a chance to do the important job of marshaling and untangling a company's assets without being forced into court by every investor or claimant." *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005). In the same vein, "[a] district court should give appropriately substantial weight to the receiver's need to proceed unhindered by litigation, and the very real danger of litigation expenses diminishing

---

[1] The "Source Entities" are: Life's Good, Inc.; Life's Good STABL Mortgage Fund, LLC; Life's Good High Yield Fund, LLC; Life's Good Capital Growth Fund, LLC; IA Capital Fund, LLC; Keystone State Capital Corporation; First Commonwealth Service Company; Robert Stinson, Jr.; Susan L. Stinson; Christine A. Stinson; Michael G. Stinson; and Laura Marable.

the receivership estate." *Id.* To protect these interests, the Third Circuit adopted a three-part test to determine whether a receivership stay should be lifted: "'(1) [w]hether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim.'" *Id.* (quoting *S.E.C. v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984) ("*Wencke II*"); alteration in original).

Without seriously addressing the Receiver's weighty interests in preserving the stay imposed by this Court, Morningstar seeks to lift the stay on the theory that the best defense is a good offense. Noting that the Receiver recently filed suit against Morningstar (for securities fraud and for aiding and abetting Robert Stinson, Jr.'s Ponzi scheme), the company claims that it will be harmed unless it can sue Stinson and two Receivership Entities now, and attempts to paint itself as another victim of Stinson's fraud, rather than the joint tortfeasor and enabler that the Receiver alleges Morningstar was. *See* Morningstar's Br. in Support of Mot. for Leave to File Complaint ("Morningstar's Br.") at 3.

Morningstar may have an interest in establishing a counter-narrative in the face of the Receiver's Complaint, but Morningstar fails to meet the high standard established by the Third Circuit to lift the stay. Morningstar does not claim that lifting the stay will preserve the *status quo* that the stay is designed to protect, and it is clear that lifting the stay would upset the *status quo*. Morningstar does not contend that its motion should be granted because of its timing relative to the overall duration of the Receivership. Morningstar's four proposed claims are meritless or inadequately pled, and there is no justification for permitting Morningstar to litigate

2

its claims rather than participating in an orderly claims process as part of an ultimate distribution from the Receivership Estate.  Morningstar's motion should be denied.

## II.    LEGAL STANDARD

When faced with a motion to lift a stay imposed as part of a receivership, the District Court must apply the three-part test quoted above in the Introduction.  The test "'simply requires the district court to balance the interests of the Receiver and the moving party.... [T]he interests of the Receiver are very broad and include not only the protection of the receivership *res*, but also protection of defrauded investors and considerations of judicial economy.'"  *Acorn Tech. Fund*, 429 F.3d at 443 (quoting *S.E.C. v. Universal Fin.*, 760 F.2d 1034, 1038 (9th Cir. 1985); alteration in original).   In conducting this balancing test, the District Court should give "appropriately substantial weight" to the Receiver's interest in effectuating his duties and preserving Receivership assets, while at the same time considering the interests of the litigant who seeks to lift the stay, primarily to ensure that such litigants "are not denied a day in court due to a lengthy stay."  *Id.*

The timing of the proposed claim in the context of the overall Receivership is significant. "Far into a receivership, if a litigant demonstrates that harm will result from not being able to pursue a colorably meritorious claim," a stay may no longer be justified.  *Id.*  However, "very early in a receivership even the most meritorious claims might fail to justify lifting a stay given the possible disruption of the receiver's duties."  *Id.* at 443-44.  Like other aspects of a District Court's procedural decisions in receivership cases, the decision to retain a stay is reviewed for abuse of discretion only.  *Id.* at 444-45.  Importantly, "[t]he burden is on the movant to prove that the balance of the factors weighs in favor of lifting the stay."  *S.E.C. v. Illarramendi*, 2012 WL 234016 at *4 (D. Conn. Jan. 25, 2012) (internal quotation marks and citation omitted).

3

III.   **ARGUMENT**

   A.  **Retaining the stay will preserve the *status quo***

   The first factor to consider under the *Wencke* framework is whether keeping the stay in

place will preserve the *status quo*. *See Acorn Tech.*, 429 F.3d at 443; *Universal Fin.*, 760 F.2d at

1038; *S.E.C. v. Vescor Capital Corp.*, 599 F.3d 1189, 1197 (10th Cir. 2010).   Tellingly,

Morningstar does not even attempt to carry its burden on this point.  Morningstar's Motion and

supporting Memorandum are devoid of even the claim that the *status quo* will be better advanced

by lifting the stay.  Morningstar's silence on this point is likely due to the lack of any basis to

argue otherwise.  The stay plainly facilitates the preservation of Receivership assets for the

benefit of investors, by preventing the Receiver from being forced to deplete the Receivership

Estate in the course of defending against claims by those allegedly victimized by Stinson's Ponzi

scheme.  *See, e.g., Vescor Capital*, 599 F.3d at 1197 ("We agree with the receiver that to remove

the Covenant Group's properties from the receivership will upset the status quo, which attempts

to preserve the assets of the defrauded investors"); *Universal Fin.*, 760 F.2d at 1038 (affirming

district court's refusal to lift stay in order to preserve status quo and thereby prevent the

receivership estate from being diminished); *S.E.C. v. Byers*, 592 F. Supp. 2d 532, 537 (S.D.N.Y.

2008) ("the best way to maintain the status quo is to permit [the receiver] to carry on with his

investigation").

   B.  **Morningstar fails to articulate a substantial injury it will suffer if the stay remains in place**

   Morningstar asserts, without analysis, that it will "suffer injury if it is not permitted to

assert its claims now."  Morningstar's Br. at 3.  Morningstar's *ipse dixit* is insufficient to meet its

burden to lift the stay.  *See, e.g., Illarramendi*, 2012 WL 234016 at *4.  Further, the supposed

harm that Morningstar identifies will be incurred, if at all, because the Receiver filed suit against

4

Morningstar due to, *inter alia*, its knowing or reckless publication of fraudulent return data for the STABL Fund. *See* Morningstar's Br. at 3 ("Morningstar's claims should be permitted to go forward now because the Receiver recently filed suit against Morningstar...."). If that type of harm were substantial enough to justify lifting a receivership stay, then such stays would be lifted every time a Receiver filed an ancillary action, and the stay would thus become meaningless. The Court should not accept Morningstar's invitation to allow the exception to swallow the rule in this way; indeed, the Court has already denied one party's motion to sue the Receiver based on supposed harm suffered as a result of the Receiver's suit. *See* Document No. 40 in *Schwartzman v. Talking Water, LLC*, No. 11-3934 at 1-2 n.1.

### C. The Receivership is far from winding down, and the timing of Morningstar's Motion therefore favors retaining the stay

The second factor in the *Acorn Tech.* three-part test is the timing of the motion to lift the stay in the context of the overall receivership. Morningstar, perhaps innocently, appears to misunderstand the focus of the "timing" factor, arguing only that it makes sense to lift the stay now so that Morningstar's proposed complaint can be "coordinated" with the Receiver's suit against Morningstar. *See* Morningstar's Br. at 3. Coordination is not the issue; the question is whether the Receivership is still in a sufficiently early stage such that the Receiver's interest in performing his duties without having to defend against lawsuits remains strong. *See Acorn Tech.*, 429 F.3d at 443-44.

In *S.E.C. v. Wencke*, 622 F.2d 1363, 1373-74 (9th Cir. 1980) ("*Wencke I*"), the Ninth Circuit upheld the District Court's maintenance of a stay after the receivership had been in existence for *four years*. Here, the Receivership has been in existence for one-and-a-half years. Further, additional facts continue to come to light as a result of the Receiver's investigation, and the Receiver is in the process of weighing the benefit of bringing additional third party claims.

*Cf. Universal Fin.*, 760 F.2d at 1039 (maintenance of stay appropriate where additional factual and legal issues continued to come to light, even though stay had been in place for nearly four years).[2]

The timing factor weighs in favor of the Receiver, and Morningstar's Motion should be denied.

### D.  Morningstar's proposed claims are meritless

Morningstar's proposed Complaint sets forth four claims:  (1) breach of contract (against Stinson and Keystone State Capital); (2) fraud (against Stinson, Keystone, and the STABL Fund); (3) injurious falsehood (against Stinson, Keystone, and the STABL Fund); and (4) indemnification (against Stinson and Keystone).  *See* Exhibit 1 to Morningstar's Br. ("Proposed Complaint" or "MPC") at 10-15.  All of the proposed claims are meritless, and the proposed Complaint therefore provides no justification for lifting the stay.  *See Acorn Tech.*, 429 F.3d at 443.

### 1. Morningstar's contractual claims fail because Morningstar has not attached any evidence of a contract with the Source Entities

Count I of Morningstar's proposed Complaint alleges breach of contract, while Count IV alleges contractual indemnification.  *See* MPC ¶¶ 55-67, 89-92.  Both claims are brought against Stinson and Keystone State Capital Corporation, and arise out of "defendants'" registration for "at least one subscription to Morningstar.com Premium".  *Id.* ¶ 56.  Morningstar attached a generic, unexecuted version of its Morningstar.com Premium agreement to the proposed

---

[2] Morningstar's claims would interfere with the Receiver's ability to perform his duties regardless of whether those claims are pursued in the form of a separate lawsuit (as Morningstar seeks to do) or as counterclaims to the Receiver's claims against Morningstar.  Accordingly, in either form, Morningstar's claims are inappropriate.  <u>See</u> <u>Acorn Tech.</u>, 429 F.3d at 450 ("… the very purpose of a receiver is to collect and disentangle a receivership estate's assets, including debts owed to it.  In carrying out that purpose, the receiver simply does not consent to the bringing of a counterclaim by every debtor.").

6

Complaint, but failed to attach a document executed by either Stinson or Keystone. *See id.* at Exhibit 2.[3]

Therefore, based on Morningstar's own records, it appears that neither Stinson nor Keystone State Capital are bound by the terms of the Morningstar.com Premium agreement due to the lack of privity between them and Morningstar. Morningstar's contractual claims are meritless, and cannot support Morningstar's motion to lift the receivership stay.

### 2.    Morningstar's fraud claim fails for lack of particularity

Count II of Morningstar's proposed Complaint alleges fraud. *See MPC ¶¶ 68-74.* Under Fed. R. Civ. P. 9(b), claims of fraud must be pled with particularity. *See, e.g., State Farm Mut. Auto Ins. Co. v. Ficchi,* 2011 WL 2313203 at *4 (E.D. Pa. June 13, 2011). To meet this burden, a plaintiff must describe the circumstances of the alleged fraud with precise allegations of date, time, or place, or else use some other means of injecting precision and some measure of substantiation into the allegations. *See Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.,* 296 F.3d 164, 172 n.10 (3d Cir. 2002). At the very least, "plaintiffs must also allege who made a misrepresentation to whom and the general content of the misrepresentation." *Lum v. Bank of Am.,* 361 F.3d 217, 224 (3d Cir. 2004). Significantly, even where many allegations related to an allegedly fraudulent scheme are "quite detailed," fraud claims in the Third Circuit will be dismissed where the plaintiff does not identify the "precise content" of each fraudulent misrepresentation. *Ficchi,* 2011 WL 2313203 at *6.

Here, Morningstar fails to identify the precise content of any of the alleged misstatements. Instead, Morningstar alleges only that, from April 2009 until July 2010, "Defendants or their employees" submitted data to Morningstar. *See MPC ¶ 23.* Morningstar

---

[3] Although there has not yet been discovery in connection with this action, the documents Morningstar produced pursuant to the Receiver's subpoena indicate that there was at least one subscription by Gregory Greene apparently as an individual investor.

does *not* allege that any of this data, in particular, was false.  Instead, Morningstar generally alleges that "Defendants" obtained ratings based on "false information," and that "the information…turned out to be false." *See id.* ¶¶ 29, 44.   Moreover, Morningstar engages in impermissible group pleading by alleging that "Defendants or their employees" submitted false data to Morningstar, *see* MPC ¶¶ 22-23, without attributing specific false statements to any one of the defendants in particular. *See Fleet Nat'l Bank v. Boyle*, 2005 WL 2455673 at *11 (holding that group pleading is insufficient to satisfy Rule 9(b)).

Morningstar's fraud claim is facially deficient, and therefore cannot support the lifting of the stay.  Morningstar's Motion should be denied.

### 3.   Morningstar's injurious falsehood claim is deficient on its face

Count III of Morningstar's proposed Complaint alleges "injurious falsehood."   In Pennsylvania, this tort provides that "publication of a disparaging statement concerning the business of another is actionable where: (1) the statement is false; (2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; (3) pecuniary loss does in fact result; and (4) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity." *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 246 (Pa. 2002) (internal quotation marks and citation omitted).

Several allegations in Count III Morningstar's proposed Complaint have no relation to any false statement.  Instead, Morningstar alleges that "Defendants" provided printed copies of Morningstar's webpage and their passwords to third parties, which allowed those third parties to access Morningstar.com Premium without paying for the privilege. *See* MPC ¶¶ 76-79.  Because

these allegations are not related to any false statement, they fail to support an injurious falsehood claim as a matter of law. *See Pro Golf*, 809 A.2d at 246.

The allegations in Count III that *do* relate to false statements also fail to state a claim for injurious falsehood as a matter of law. To state such a claim, the statements at issue must be both false *and disparaging*. *See id.*; *see also Raskin, Liss & Franciosi, P.C. v. Franciosi*, 2005 WL 957711 at *1 (C.P. Phila. Apr. 6, 2005) (injurious falsehood requires "that the publication be more than merely false; it must also be 'defamatory' or 'disparaging'"). The only false statements alleged by Morningstar are:

- That Morningstar conducted independent verification of the truth of the information submitted to its hedge fund database;[4] and

- That Morningstar conducted "audits" of funds affiliated with Stinson;

MPC ¶¶ 81-82. These statements are not disparaging or defamatory; there is nothing negative about them. Therefore, Morningstar fails to state an injurious falsehood claim, and its proposed Complaint fails to provide any justification for lifting the stay.

## IV.  CONCLUSION

Morningstar has simply failed to meet its burden of proving any of the factors that it is required to establish that the stay should be lifted in this case and the Court should reject Morningstar's attempt to jump in line in front of other potential claimants or creditors. As set forth above, the facts and law demonstrate that maintaining the stay and denying Morningstar's Motion will preserve the status quo and preserve the assets of the Estate. Morningstar will not suffer a substantial injury as a result of the stay being enforced. Furthermore, the timing of Morningstar's Motion favors denial because the Receivership has

---

[4] It is apparent from a review of Morningstar's website that this statement is not, in fact, false. *See, e.g.*, Exhibits B and C to Receiver's Compl. (Document No. 1) in *Schwartzman v. Morningstar, Inc.*, No. 12-1647 (BMS).

been in existence for only one-and-a-half years, and the Receiver continues to identify and pursue collection of assets for the Estate. Finally, Morningstar's claims are facially deficient and meritless. Because every factor applicable to the analysis of Morningstar's Motion unmistakably favors maintaining the stay of any claims against the Receiver and Source Entities, Morningstar's Motion for Leave to File Complaint must be denied.

Respectfully submitted,

**PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP**

By: _____

GAETAN J. ALFANO, ESQUIRE
ETHAN J. BARLIEB, ESQUIRE
I.D. Nos. 32971 & 205805
1818 Market Street, Suite 3402
Philadelphia, PA  19103
(215) 320-6200
*Attorneys for Kamian Schwartzman, Receiver*

Dated:  April 19, 2012

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

SECURITIES AND EXCHANGE COMMISSION,

              Plaintiff,

           v.

ROBERT STINSON, JR., et al.

              Defendants.

Civil Action No. 10-cv-3130-BMS

## CERTIFICATE OF SERVICE

I do hereby certify that on this 19th day of April, 2012, I caused a true and correct copy of

the foregoing document to be served on the following and in the manner indicated below:

**VIA ELECTRONIC MAIL OR
FIRST CLASS MAIL (AS INDICATED)**

| | |
|---|---|
| Robert S. Stinson, Jr.<br>First Commonwealth Service Company<br>IA Capital Fund, LLC<br>Keystone State Capital, Corporation<br>Life's Good, Inc.<br>Life's Good Capital Growth Fund, LLC<br>Life's Good High Yield Mortgage Fund, LLC<br>Life's Good STABL Mortgage Fund, LLC<br>**(All companies c/o Robert S. Stinson, Jr.)**<br><br>FDC Philadelphia<br>700 Arch Street<br>Philadelphia, PA 19106<br>*(via first class  mail)* | Christine A. Stinson<br>58 Main Street<br>Chesterbrook, PA   19087<br>*(via electronic  mail)*<br>castinson7@gmail.com |
| Michael G. Stinson<br>*(via electronic mail)*<br>michaelgstinson@msn.com | Laura Marable<br>P.O. Box 1213<br>Volcano, HI   96785<br>*(via electronic mail*:<br>tigerlily_6648@yahoo.com) |

**VIA COURT'S ECF SYSTEM**:

Catherine E. Pappas, Esquire
Senior Trial Counsel
United States Securities and Exchange Commission
Philadelphia Regional Office
701 Market Street, Suite 2000
Philadelphia, PA   19106

G. Jeffrey Boujoukos
U.S. Securities & Exchange Commission
701 Market St Ste 2000
Philadelphia, Pa 19106
*Counsel for Plaintiff, Securities and Exchange Commission*

Ellen C. Brotman, Esquire
Montgomery McCracken
123 South Broad Street
Philadelphia, PA 19109
*Counsel for Relief Defendant Susan L. Stinson*

Jeffrey A. Dailey, Esquire
Akin Gump Strauss Hauer & Feld LLP
Two Commerce Square
2001 Market Street
Suite 4100
Philadelphia, PA 19103-7013
*Counsel for Morningstar, Inc.*

**PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP**

By:   /s/ ETHAN J. BARLIEB.
ETHAN J. BARLIEB, ESQUIRE
1818 Market Street, Suite 3402
Philadelphia, PA 19103
(215) 320-6200
jps@pietragallo.com

*Counsel   for   Court   Appointed   Receiver,
Kamian Schwartzman*

Dated: April 19, 2012

2