## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. |
|  | : 10-CV-03130 (BMS) |
| ROBERT STINSON, JR., LIFE'S GOOD, INC., LIFE'S GOOD STABL MORTGAGE FUND, LLC, LIFE'S GOOD HIGH YIELD MORTGAGE FUND, LLC, LIFE'S GOOD CAPITAL GROWTH FUND, LLC, IA CAPITAL FUND, LLC, KEYSTONE STATE CAPITAL CORPORATION, | : |
| Defendants, and | : |
| FIRST COMMONWEALTH SERVICE COMPANY, SUSAN L. STINSON, CHRISTINE A. STINSON, MICHAEL G. STINSON, LAURA MARABLE, | : |
| Relief Defendants. | : |

### MORNINGSTAR, INC.'S OMNIBUS REPLY BRIEF IN SUPPORT OF MOTION FOR LEAVE TO FILE COMPLAINT

### INTRODUCTION

Morningstar, Inc. ("Morningstar") has requested that the Court lift the receivership stay

to allow Morningstar to file claims against Robert Stinson, Life's Good STABL Fund

("LGSMF") and Keystone State Capital Corporation ("Keystone"). Morningstar has met its

burden for this Court to lift the stay and allow Morningstar to file its complaint.

The oppositions to Morningstar's request, filed by Receiver and the Securities and Exchange Commission ("SEC") (D.E. 230 and 229), fail to cite any authority that supports complete denial of Morningstar's request for leave to assert claims. At a minimum, the stay should be lifted to allow Morningstar to file its complaint. In the alternative, it is within the Court's discretion to allow Morningstar's claims to be filed and pursued, but to stay execution of any judgment against the Receivership Estate pending further leave of Court. The Receiver and SEC claim that allowing Morningstar's claims to be filed will drain Receivership resources because Morningstar will unfairly enforce a judgment before other creditors. The speculative harm claimed by the Receiver and the SEC disappears if the Court allows Morningstar to file and pursue its claim, but stays execution of any judgment pending further leave of Court. As such, Morningstar's Motion for Leave to File Complaint should be granted for each of the reasons set forth therein, and because Morningstar has satisfied the Third Circuit's three part test for lifting a receivership stay. The oppositions filed by the Receiver and SEC fail for three principal reasons.

First, lifting the stay will not disturb the status quo. Morningstar is not seeking to enforce a judgment against Receivership assets, and is prepared to agree to a stay modification that protects the Receiver from judgment enforcement until further leave of Court. In addition, Morningstar will incur a substantial injury if its unable to file its claims.

Second, now is an appropriate time to lift the stay to allow Morningstar's claims to be filed. The judgment enforcement concerns raised by the SEC and Receiver are alleviated by the stay modifications proposed by Morningstar. Neither the SEC nor Receiver identify a later time that would be more appropriate for Morningstar's claims to be filed.

Third, Morningstar's claims have merit. The Receiver does not argue that Morningstar has no colorable claims, only that the claims fail for lack of specificity. At this juncture, the

2

Court's review is limited to whether Morningstar has colorable claims, not whether those claims are sufficiently pleaded. Because the Receiver does not argue that Morningstar could not assert colorable claims, this objection fails. In any event, each of Morningstar's claims have been properly pleaded, and the Receiver's objection fails. Indeed, this objection is disingenuous given that the Receiver previously did not oppose the SEC's request for judgment on claims based on similar misrepresentations. Because the Receiver previously agreed to judgment on these very issues, he is estopped from challenging them in a suit by Morningstar.

## I.   THE RECEIVER AND THE SEC ATTEMPT TO DISTORT THE APPLICABLE STANDARD

The SEC and Receiver argue that this Court should not allow Morningstar to file claims against proposed defendants. *See* SEC Brief at 1 ("the Commission respectfully requests that this Court deny the Motion in full"); Receiver Brief at 10 ("Morningstar's Motion for Leave to File Complaint must be denied"). However, the SEC and Receiver cite no cases supporting such a bar. As all parties concede, the Third Circuit has adopted the same three part test as the Ninth Circuit for determining whether to lift a receivership stay:

> (1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time and the course of the Receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim.

*United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 444 (3rd Cir. 2005) (quoting *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984)). With respect to this standard, the Ninth Circuit stated that the *Wencke* factors:

> Simply requires the District Court to balance the interests of the Receiver and the moving party ... [T]he interests of the Receiver are very broad and include not only protection of the Receivership *res*, but also protection of defrauded investors and considerations of judicial economy.

3

429 F.3d at 443, quoting *SEC v. Universal Fin.*, 760 F.2d 1034, 1038 (9th Cir. 1985). The Third

Circuit has also recognized that the balancing of these considerations must include "an

appropriate escape valve, which allows potential litigants to petition the Court for permission to

sue … so that litigants are not denied a day in Court during a lengthy stay." *Id.*

With these considerations in mind, lifting the stay for the limited purpose of permitting

Morningstar to file its complaint is appropriate here. It is also within the Court's discretion to

allow Morningstar's claims to proceed, but to simply stay any potential execution of judgment

against the Receivership estate pending a claims and distribution process being set. Both limited

modifications to the stay appropriately balance the considerations underlying the test followed by

the Third Circuit and adequately address the Receiver's and SEC's objections.

## II.     LIFTING THE STAY WILL NOT DISTURB THE STATUS QUO AND MORNINGSTAR HAS ARTICULATED A SUBSTANTIAL INJURY IF UNABLE TO PURSUE ITS CLAIMS

### A.     Lifting the Stay Will Not Disturb the Status Quo

The Receiver argues that retaining the stay will preserve the status quo by preserving the

assets in the Receivership Estate. *See* Receiver's Brief in Opposition to Morningstar's Motion

for Leave to File Complaint ("Receiver's Brief") at 4. The Receiver states that "coordination is

not the issue; the question is whether the Receivership is still in a sufficiently early state such

that the Receiver's interest in performing his duties without having to defend against lawsuits

remains strong." *See* Receiver's Brief at 5. Similarly, the SEC is concerned with Morningstar

executing a judgment on receivership assets prior to a claims and distribution process being set.

*See* Plaintiff's Response in Opposition to Motion of Morningstar, Inc. for Leave to File

Complaint ("SEC's Brief") at 8. Morningstar is prepared to agree, and has proposed, that any

stay modification continue the stay of execution on a judgment obtained, pending a claim and

distribution process being set by the Court. Morningstar simply wants its claims to be heard

4

alongside the Receiver's claims. The alternative, forcing Morningstar to wait until an undetermined, later point in the Receivership, will only result in a greater expenditure of Receivership assets and will cause a greater disturbance to the status quo. The Receiver will then need to defend itself against claims interrelated to claims previously pursued. Indeed, the SEC concedes that the estate will suffer no harm in allowing discovery to proceed on Morningstar's claims. *See* SEC Brief at 8. Moreover, allowing Morningstar to proceed with its claims now is the most economic use of the Receivership assets. The concerns of the SEC and Receiver are addressed by the limited stay modifications proposed by Morningstar.

**B.      Morningstar Will Suffer Substantial Injury if the Stay Remains in Place**

The Receiver asserts that Morningstar has failed to articulate a substantial injury it would suffer if the stay remains in place. *See* Receiver's Brief at 4-5. Morningstar's claims arise out of misrepresentations and breaches of contracts discovered in 2010 or later, and could be compromised by the passage of time if not asserted now. Morningstar will also suffer injury from increased costs to defend and assert claims piecemeal.

While the SEC and Receiver claim *Acorn Tech.* is factually similar, several key facts existed in that case that do not exist here. In *Acorn Tech.*, the Court found that plaintiffs would not suffer an injury if the stay of litigation was not lifted because the Court found there to be no difference in relief available to plaintiffs if they asserted affirmative defenses in response to the Receiver's claims, or were allowed to file separate counterclaims. The Court found that "not being allowed the first bite at the apple is not the kind of substantial injury we will recognize under the first prong of *Wencke*." 429 F.3d at 449. However, unlike the movant's in *Acorn Tech.*, Morningstar's claims are not akin to affirmative defenses and Morningstar is not seeking to have first bite at the apple with respect to recovery of Receivership estate assets. Morningstar is proposing two alternatives, both of which preserve Receivership assets and do not give

5

Morningstar any advantage over other creditors that may be involved in the claims and distribution process.

The Receiver also notes that this Court has "already denied one party's motion to sue the Receiver based on supposed harm suffered as a result of the Receiver's suit." *See* Receiver's Brief at 5. However, the Court denied the motion to sue on completely different grounds than are at issue here. In *Schwartzman v. Talking Water, LLC*, defendants were seeking to assert claims against the Receiver due to the Receiver's current control of source entities. *See Schwartzman v. Talking Water, LLC*, No. 11-3934, D.E. 40, at 1 n.1. The Court denied the motion on the basis that the Receiver has absolute immunity when "acting within the scope of the appointing court's orders." *Id.* at 2 n.1. Morningstar's claims do not challenge the Receiver's conduct or action, and, in fact, name the Receiver only as a nominal defendant.

Moreover, the Receiver has asserted claims against Morningstar that derive from the same nucleus of operative facts as those claims Morningstar seeks to bring. Accordingly, Morningstar's affirmative claims would also constitute compulsory counterclaims. Federal Rule of Civil Procedure 13 requires a party to assert any and all counterclaims that arise "out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. Pro. 13. The policy of Rule 13 is to promote judicial economy and avoid "substantial duplication of effort and time by the parties and the courts." *Transamerica Occidential Life Ins. Co. v. Aviation Office of Am.*, 292 F.3d 384, 389-90 (3d Cir. 2002) (quoting *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir. 1978)). The policy of Rule 13 corresponds with the Receiver's goal of maintaining and preserving its resources. The more efficient method would be to try both Morningstar's and the Receiver's related claims in a single action. This will reduce the expense of duplicative discovery and motion practice.

6

The SEC concedes that Morningstar's claims are related to the Receiver's underlying claims against Morningstar, and in fact, concedes that Morningstar should be able to pursue discovery of those claims in connection with the Receiver's action. *See* SEC's Brief p.8. However, by not permitting Morningstar's claims to continue, Morningstar and the Receiver will be required to conduct discovery surrounding the same facts and circumstances in two separate actions. That would be a waste of the Receiver's and Morningstar's resources and inapposite to judicial economy.

Morningstar is willing to agree that if judgment is obtained in Morningstar's favor, enforcement of a judgment shall be stayed until a claims distribution process is established. In the alternative, this Court should permit Morningstar's complaint to be filed before reinstituting the stay of further proceedings, so that none of Morningstar's rights are compromised due to passage of time.

## III. THE TIMING IS APPROPRIATE TO LIFT THE STAY FOR THE LIMITED PURPOSES PROPOSED BY MORNINGSTAR

The Receiver's only argument against the timing of Morningstar's claims is that Morningstar is attempting "to jump in line in front of other potential claimants or creditors." *See* Receiver's Brief at 9. The Receivership has been in place for almost twenty months, and is now in a position where the Receiver's activities are almost solely related to litigation related activities. *See* Sixth Quarterly Status Report of Kamien Schwartzman, Court appointed Receiver at Section II.B, III, V and Exhibit "B" (D.E. 231). There is nothing unique about the present timing that counsels against permitting Morningstar to file its claims, and the Receiver does not identify any later time that it believes would be appropriate for Morningstar's claims to be filed. As such, allowing Morningstar's claims to be filed now, to be heard alongside the claims raised

7

by the Receiver is appropriate. The concerns raised by the SEC and Receiver are alleviated by

the stay modifications proposed by Morningstar.

## IV.    MORNINGSTAR'S CLAIMS HAVE MERIT

Morningstar has sufficiently alleged meritorious claims. When evaluating the merits of

claims in the context of a request to lift a receivership stay, the Third Circuit has stated:

> We note that when it is asked to lift a stay it would usually be
> improper for a District Court to attempt to actually judge the merits
> of the moving party's claims at such an early point in the
> proceedings. A District Court need only determine whether the
> party has *colorable* claims to assert which justify lifting the
> Receivership's stay. *See Wencke II*, 742 F.2d at 1232. If it appears
> that a claim has no merit on its face, that of course may end the
> matter. But, if a claim may have merit - and factual development
> may be necessary to assess this - the District Court will have to
> address the other *Wencke* factors.

*Acorn Tech.*, 429 F.3d at 444. In *Acorn*, the Court affirmed denial of the motion to lift the stay

because the claims asserted were not colorable as they were clearly barred by the Federal Tort

Claims Act or were derivative claims that plaintiffs lacked standing to assert individually under

New Jersey's Revised Uniform Limited Partnership Act. *See Acorn Tech*, 429 F.3d at 445-447.

The Receiver does not claim there is a statutory or standing bar to Morningstar's claims or that

Morningstar has no colorable claims to assert. Instead the Receiver takes issue with the

sufficiency of Morningstar's pleading of individual allegations. Under *Acorn Tech.*, for purposes

of determining whether to lift the stay, such an inquiry is inappropriate. In any event,

Morningstar has colorable claims which are sufficiently pleaded.

### A.    Morningstar's Contract and Indemnity Claims

The Receiver argues that Morningstar's two contractual claims are meritless because

Morningstar "failed to attach a document executed by either Stinson or Keystone." *See*

Receiver's Brief at 6-7. However, Morningstar did attach the contracts to its draft Complaint and

8

alleged that these contracts are internet contracts that were executed electronically. *See* Morningstar Complaint, ¶29. Moreover, the Receiver himself attached to his complaint against Morningstar, screen shots of Morningstar's ratings that Mr. Stinson printed using his subscription and which specifically state in the upper left corner "Welcome, Robert." *See* Exhibit F of the Receiver's Ancillary Complaint. These pleaded facts demonstrate that Robert Stinson registered and contracted for a subscription to Morningstar.com Premium. The Receiver also concedes that Keystone employee Gregory Greene had a subscription. *See* Receiver Brief at 7, n. 3. While the Receiver will apparently argue that Keystone is not bound by the subscription Mr. Greene obtained using his Keystone work information and used for Keystone purposes, such issues are to be addressed during discovery, and are not appropriate for this Court to consider at this time.

As such, Morningstar has alleged colorable breach of contract and indemnity claims.

## B. Morningstar's Fraud Claim

The Receiver incorrectly argues that Morningstar failed to sufficiently allege fraud. First, the Receiver does not claim that Morningstar does not have a colorable fraud claim, only that the draft complaint is insufficient. Because the Receiver has not argued that Morningstar could not plead a fraud claim -- the only inquiry this Court need concern itself with at this stage under *Acorn Tech.* -- the Receiver's objection fails.

Second, Morningstar has sufficiently pleaded fraud. Morningstar alleges that beginning in April of 2009 and thereafter on a monthly basis until July of 2010, defendants submitted false historical data and a fictionalized hedge fund manager biography. *See* Morningstar Complaint, ¶ 22-24, 44, 50. Addressing allegations made by the SEC, this Court has already found that defendants "made a number of false and misleading statements and omissions regarding LFSMF's operations and Stinson's background." *SEC v. Stinson*, No. 10-3130, 2011 WL 2462038, *5 (E.D.Pa. June 20, 2011). Morningstar has alleged sufficient detail about the timing

9

of the misrepresentations, the falsity of the historical data and manager biography, and that each of the defendants were involved in making each the fraudulent statements. As such, Morningstar has shown it has colorable fraud claims against defendants. To the extent the Court determines more sufficient pleading may be required in the future, the appropriate course would be to permit amendment, not bar the claims outright by refusing to lift the stay.

Third, the Receiver is estopped from challenging Morningstar's allegations of fraud. Under the doctrine of collateral estoppel, a party is precluded from relitigating issues resolved in an earlier proceeding. *Burlington N. R.R. v. Hyundai Merchant Marine Co.*, 63 F.3d 1227, 1232 (3d Cir. 1995); *AMTRAK v. Pa. Public Utilities Comm.*, 342 F.3d 242, 252 (3d Cir. 2003). This Court already held that the "SEC has shown that Defendants made a number of false and misleading statements of material fact regarding both the Life's Good Funds' operations and Stinson's background." *See SEC v. Stinson*, No. 10-3130, 2011 U.S. Dist. LEXIS 65723, *9 (E.D.Pa. June 20, 2011). It is these same fraudulent misstatements that form the basis of Morningstar's fraud claim. As such, application of collateral estoppel is proper and the Receiver cannot challenge whether or not the statements made were fraudulent as he attempts to do. *See Cooney v. Booth*, 210 Fed. Appx. 213, 216 (3d Cir. 2007) (holding fraud claim was barred by collateral estoppel based on prior case).

Because Morningstar has a colorable fraud claim, the Receiver's objection fails.

### C.    Morningstar's Injurious Falsehood Claim

The Receiver states that Morningstar's cause of action for injurious falsehood fails to state a claim because "these statements are not disparaging or defamatory; there is nothing negative about them." *See* Receiver Brief at 9. However, this argument ignores the definition of what constitutes a defamatory statement. "A communication is defamatory if it tends so to harm

10

the reputation of another as to lower him in the estimation of the community or to deter a third person from associating or dealing with him." *See* Restatement Second of Torts, §559.

Morningstar alleges several false communications about Morningstar's actions with respect to Life's Good, which the proposed defendants knew would harm Morningstar's reputation once defendants' fraud was revealed. *See* Complaint ¶¶ 81-83. Once defendant's fraud was exposed, these false statements caused harm to Morningstar's reputation, including, among the investors in Life's Good, some of whom have sued Morningstar based on a claimed (yet incorrect) belief in those false statements. Morningstar has satisfied the requirement of pleading that the statements were defamatory because it has alleged that it suffered harm to reputation as a result of the false statements by the proposed defendants. Whether or not individuals who received those statements view them as "negative" or not, as the Receiver contends, will be an issue that will be the subject matter of discovery.

At this juncture, Morningstar has shown that it has a colorable claim for injurious falsehood and the Receiver's objection should be rejected.

11

## CONCLUSION

For each of the foregoing reasons, as well as the reasons set forth in Morningstar's

Motion for Leave to File Complaint, Morningstar respectfully requests that this Court grant its

Motion for Leave to File Complaint.

Respectfully submitted,

/Jeffery A. Dailey
Jeffery A. Dailey (I.D. No. 85993)
Natalie Lesser (I.D. No. 309334)
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA 19103-7013
Phone: (215) 965-1200
Facsimile: (215) 965-1210

Dated:  May 2, 2012                     Counsel for Morningstar, Inc.

12