IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : : | CIVIL ACTION |
| Plaintiff, | : : | |
| v. | : : | |
| ROBERT STINSON, JR., et al., | : | No. 10-3130 |
| Defendants. | : | |

**MEMORANDUM**

**Schiller, J.**                                                                                              **January 8, 2015**

In September of 2010, this Court established a receivership estate (the "Estate") to attempt to recover investment funds lost in a Ponzi scheme perpetrated by now-incarcerated Defendant Robert Stinson, Jr. After over four years of work and the successful recovery of approximately $1.6 million, Receiver Kamian Schwartzman and his counsel, Gaetan Alfano (the "Estate Professionals"), seek to wind down the Estate and have submitted their final fee application. The Securities and Exchange Commission (the "Commission") opposes the Receiver's fee application and has submitted alternative proposals which would distribute either half or all of the Estate to the defrauded investors using the "net investment" method. For the following reasons, the Court denies the Receiver's Final Fee Application and grants the Commission's alternative proposal to distribute half of the remaining Estate to the investors.

**I.      BACKGROUND**

**A.      The Receivership**

The facts of this case are truly unfortunate. From 2006 to 2010, Robert Stinson, an officer of the "Life's Good Funds," fraudulently obtained over $17 million from over 262 investors.

*SEC v. Stinson*, Civ. A. No. 10-3130, 2011 WL 2462038, at *1 (E.D. Pa. Jun. 20, 2011). Stinson contacted investors and promised returns of fourteen to sixteen percent through the Life's Good Funds' real estate investments. *Id.* Unfortunately, the Commission's investigation later revealed that the Life's Good Funds were actually a massive Ponzi scheme which did not hold any significant real estate assets. *Id.* Stinson paid distributions to older investors using deposits from new investors, and also used investor money to purchase automobiles, steakhouse dinners, and vacations. *Id.* at *2. Sadly, many of Stinson's victims were elderly individuals fraudulently induced to invest their retirement funds. (Supplemental Mem. in Supp. of the Comm'n's Resp. and Alternative Proposal to the Receiver's Final Fee Application [Comm'n's Supplemental Mem.] at 2.) On June 28, 2010, the Commission filed this lawsuit against Stinson and several codefendants, charging them with violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. (*Id.*) On September 13, 2010, the Court granted the Commission's motion to establish a receivership estate and appointed Kamian Schwartzman as receiver. (*Id.*)

Over the approximately four-year span of the receivership, the Receiver recovered over $1.6 million in assets. (Receiver's Final Fee Application Ex. A [Accounting Report] at 2.) The majority of assets were recovered through settlements with at least twenty-four third parties, which entailed considerable time and expense on the part of the Estate Professionals. (*Id.* at 1.) For example, the Estate Professionals tracked down and sold cars in Texas and New Jersey at auctions in order to provide a litigation fund for the Estate. (Tr. of Final Fee Application Hr'g [Tr.] at 21.)

The Receiver's best hope of a large recovery arose from the only viable claim against a third party, Morningstar, Inc. With the support of the Commission and many defrauded investors, the Receiver sued Morningstar, an investment research firm, alleging violations of

§ 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, aiding and abetting breach of fiduciary duty, and aiding and abetting fraud. Morningstar had given a five-star rating to one of Stinson's funds based on data provided by the fund itself, without further investigating the data or checking it for accuracy. The Estate Professionals expended a great deal of time and effort in pursuing a recovery for the investors, and the complaint survived both a motion to dismiss and a motion for summary judgment. However, after a bench trial, the Court entered judgment in favor of Morningstar and against the Receiver on all counts.

### B. Distribution of Remaining Funds

Over the course of the receivership, the Estate Professionals incurred $2,496,780.23 in fees, $154,788.25 of which was voluntarily written off. (Receiver's Reply in Supp. of Receiver's and Counsel's Final Fee Petition [Receiver's Reply] Ex. B [Fee Summary].) The Estate Professionals have collected a total of $742,447.18 in fees from their nine previous fee petitions, leaving an outstanding balance of $1,599.544.80. (*Id.*) There is approximately $423,000 remaining in the Estate to be distributed. (Comm'n's Supplemental Mem. at 1.)

The Commission has submitted two proposals for distributing the remainder of the Estate: (1) dividing the Estate equally between the investors and the Estate Professionals, or (2) distributing the remaining Estate to the investors. Under the first proposal, the defrauded investors would receive approximately $211,100, distributed pro rata using the "net investment" methodology. (*Id.* at 3.) According to the Commission, 257 investors would receive distributions ranging from $25 to $7,400. (*Id.*) Over half of the investors would receive disbursements over $500, with sixty-three investors receiving more than $1,000. (*Id.*) The Commission's second proposal uses an identical methodology, except distributions would range from $51 to $14,800. (*Id.*)

The Receiver first proposed that the remaining assets of the Estate be used to satisfy the Estate Professionals' outstanding fees. (Receiver's Final Fee Application at 5.) However, in order to acknowledge the Commission's position on the necessity of a distribution to investors, the Receiver has also submitted an alternative proposal. Under this proposal, the defrauded investors would be divided into three "tiers" based on net loss. Investors in the first tier, those who lost $2,000 to $49,999, would receive $350. (Receiver's Reply at 3.) Investors in the second tier, those who lost $50,000 to $99,999, would receive $550. (*Id.*) Finally, investors who lost $100,000 or more would receive $850. (*Id.*) A total of $128,250 would be distributed to the investors, with the remaining $294,750 applied to the outstanding professional fees. (Fee Summary.)

## II.   STANDARD OF REVIEW

A court-appointed receiver who reasonably and diligently discharges his or her duties is entitled to fair compensation for services rendered and expenses incurred. *SEC v. Byers*, Civ. A. No. 08-7104, 2014 WL 7336454, at *5 (S.D.N.Y. Dec. 23, 2014). The District Court has significant discretion over the amount of compensation awarded to a court-appointed receiver. *United States v. Code Prods. Corp.*, 362 F.2d 669, 673 (3d Cir. 1966). However, receivers and their attorneys may only be awarded moderate compensation, avoiding "even the appearance of a windfall." *Byers*, 2014 WL 7336454, at *6. This "rule of moderation" is especially relevant when hundreds of victims have been defrauded and will recover only a fraction of their losses. *Id.*

In calculating the Estate Professionals' fees, the Court must consider the fair value of the time, labor, and skill required, as measured by "conservative business standards," the degree of activity and integrity with which the work was conducted, and the result obtained. *United States*

4

*v. Larchwood Gardens, Inc.*, 404 F.2d 1108, 1110 (3d Cir. 1968). The Commission's agreement with or opposition to the receiver's fee application is given "great weight" in determining whether the application is reasonable. *SEC v. Fifth Ave. Coach Lines*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973).

**III.    DISCUSSION**

The Court first rejects the Receiver's original fee application, in which the Estate Professionals would receive the entirety of the Estate, as well as the Commission's proposal to distribute all remaining assets to the defrauded investors. Courts have recognized the importance of preserving limited estate assets for defrauded investors, even when doing so limits the payment of professional fees. *See, e.g.*, *SEC v. Cobalt Multifamily Investors I, Inc.*, 542 F. Supp. 2d 277, 281 (S.D.N.Y. 2008). Here, Stinson's victims must receive at least some distribution in order for the receivership to have served its purpose—otherwise, the receivership would solely benefit the Estate Professionals. While results are not the only consideration in determining the propriety of a fee award, the rule of moderation counsels against awarding the entirety of the Estate to the Estate Professionals, while leaving no recovery for the investors.

At the same time, refusing to award the Estate Professionals any further fees would deprive the Professionals of fair compensation for services rendered. The Estate Professionals have conducted themselves in an exemplary manner throughout the receivership period. Indeed, counsel for the Commission praised the work of the Estate Professionals at the motion hearing. (Tr. at 23-24.) The Estate Professionals stepped into an estate which contained virtually no liquid assets and expended hundreds of hours analyzing Stinson's records, seizing assets, and litigating

actions against individuals across the country. (Receiver's Reply at 1-2.) These considerations weigh strongly in favor of granting the Estate Professionals an additional distribution.

Likewise, the Estate Professionals must not be penalized for the unsuccessful outcome of the *Morningstar* trial. The Receiver notes that prior to *Morningstar*, he could have closed the Estate with a balance that would have covered all professional fees and still allowed for a distribution. (*Id.* at 2.) However, at the urging of the Commission and numerous investors, the Receiver pursued the claims against Morningstar to achieve a greater recovery for the investors. This Court granted judgment in favor of Morningstar not because of any deficient performance by the Receiver and counsel, but because Congress has failed to regulate effectively entities that publish information about investment vehicles. The Court must apply the securities laws passed by Congress, whether the Court agrees with the outcome or not. Regrettably, Congress' woeful dereliction of its duties has further victimized the defrauded investors in this case.

This leaves the Court with two proposals for a partial distribution: the Commission's net investment, pro rata distribution of $211,100, or the Receiver's tiered distribution of $128,250. The Court will adopt the Commission's plan. A court may approve a distribution plan provided it is fair and reasonable. *SEC v. Wang*, 944 F.2d 80, 81 (2d Cir. 1991). The net investment method is a well-accepted method of distributing receivership assets, and fulfills the important goal of equitably compensating all similarly situated investors. *See, e.g.*, *SEC v. Huber*, 702 F.3d 903, 907 (7th Cir. 2012); *CTFC v. Barki, LLC*, Civ. A. No. 09-106, 2009 WL 3839389, at *2 (W.D.N.C. Nov. 12, 2009). Under the Commission's plan, each defrauded investor will recover approximately 1.3 percent of his or her investment. Unfortunately, a lawsuit cannot be an insurance policy against loss. However, the Court is mindful of the numerous investors who wrote to the Commission or testified at the hearing requesting some distribution from the Estate,

however small, in order to assist in paying medical bills, to cover unexpected expenses, or simply to vindicate the judicial process. (Comm'n's Supplemental Mem. Exs. C & D [Investor Correspondence]; Tr. at 30-33.) The court thus concludes that the Commission's proposal to distribute approximately $211,100 of the Estate to the investors using the net investment method is fair and reasonable and best balances the investors' need for recovery with the Receiver's entitlement to fair compensation.

The Receiver's tiered distribution plan fails to treat similarly situated investors equally. The Receiver relies on *Doe v. Calumet City, Ill.*, Civ. A. No. 87-3594, 1993 WL 512788, at *2 (N.D. Ill. Dec. 9, 1993) to support adoption of a tiered distribution scheme. However, that case is inapposite because the victims, women who had been subjected to illegal strip searches, suffered nonquantifiable, noneconomic damages. Here, the investors' damages are solely economic and easily calculated. Further, the Receiver's plan causes vastly different results among the investors. For example, Investors 112, 168, and 263, who each invested $2,000, would recoup over 17 percent of their investment, while Investor 128, who invested over $500,000, would recoup only 0.15 percent. The unfortunate consequence of the net investment method is that all investors will receive a low payout and no investor will be made whole. However, this Court cannot arbitrarily select winners and losers among investors who were all harmed in the same manner. Therefore, the Commission's plan is a superior method for the circumstances of this particular case.

## IV.   CONCLUSION

While the vast majority of the funds are likely lost forever, the Court will approve the distribution of half of the remaining estate to the defrauded investors, with the remainder paid to the Estate Professionals. Accordingly, the Receiver's Final Fee Application is denied, and the

Commission's alternative proposal is granted. An Order consistent with this Memorandum will be docketed separately.